[No. 31550.   Department One.   March 9, 1951.]

MABEL VIOLA HEUCHAN, *Respondent*, v. NORMAN J. HEUCHAN, *Appellant*.[1]

[1]Reported in 228 P. (2d) 470.

*Tyre H. Hollander*, for appellant.

*Hyland, Elvidge & Alvord*, for respondent.

HILL, J.—On this appeal, Norman J. Heuchan challenges the jurisdiction of the superior court to make any modification in the alimony award in this case, the propriety of any modification, and the extent and character of the modification made.

After almost thirty years of marriage, during the last five of which they were separated, the Heuchans were divorced in 1937 and Mrs. Heuchan's former name of Mabel Viola Fleetwood was restored to her. There was a property settlement agreement, and we quote from paragraph 5 thereof:

" 'For a period of one year from and after the date of this agreement [January 15, 1937], First Party [Norman J. Heuchan] agrees to pay Second Party [Mabel Viola Heuchan, now Fleetwood] the sum of One Hundred Dollars ($100.00) per month, and from and after the expiration of one year from the date hereof he agrees to pay her the sum of Seventy-five Dollars ($75.00) per month; PROVIDED, HOWEVER, that in the event the *salary or income* of First Party shall be reduced in the future, the payments to be made to Second Party shall be reduced in the same proportion as the reduction in the salary or income of First Party.' " (Italics ours.)

This property settlement agreement was not incorporated in or made a part of the interlocutory decree, but the decree did provide that the property settlement agreement was in all respects approved and confirmed, and the parties were " . . . directed to carry out said agreement in all respects just as if the terms thereof had been fixed and established by the decree of this court."

At that time Mr. Heuchan was employed by a railroad company at a salary of $325 a month.

The final decree was entered July 20, 1937, and Mr. Heuchan married again almost immediately thereafter, his second wife being a widow with two minor children, both of whom are now self-supporting. To avoid confusion, we will hereinafter refer to the first wife, the respondent herein, as Mrs. Fleetwood.

We are now concerned with the third petition for modification of the alimony provisions of the interlocutory decree, being the first by Mrs. Fleetwood. The first by Mr. Heuchan was in 1940. At that time the Honorable Donald A. McDonald, the judge of the King county superior court before whom the hearing was had, raised a question as to whether the monthly payments of seventy-five dollars provided for in the property settlement agreement were actually part of the property settlement or whether they constituted alimony. To secure consideration of his petition, Mr. Heuchan stipulated that the payments were alimony. Judge McDonald then proceeded with the hearing and, April 24, 1940, denied the petition to modify, concluding that there had been no material change in the circumstances of the parties.

Mr. Heuchan continued to receive a salary of $325 a month until November 1, 1945, and paid Mrs. Fleetwood $75 a month to that date. From November 1, 1945, to July 10, 1946, he was carried as an employee at $100 a month, and on the latter date his employment ceased and his railway pension began. At first the pension was $98.38 a month, but since August 1, 1948, it has been $118.30.

During the period Mr. Heuchan received $100 a month from the railroad company, he paid Mrs. Fleetwood $23.08 a month, that being the same proportion of $100 that $75 is of $325. He made no accounting of other income, and made no payments to her after July, 1946, when he sent a letter stating that, since he was no longer employed, he would make no further payments.

Mrs. Fleetwood was unable to discover Mr. Heuchan's whereabouts for some time thereafter, but finally located him in Salinas, California, and commenced an action there in 1948 to recover back alimony. Mr. Heuchan immediately filed his second petition to modify the interlocutory decree, asking the court to decree that Mrs. Fleetwood was entitled to no alimony, past or future. Mrs. Fleetwood answered the petition, asking for the alimony due her under the terms of the interlocutory decree and alleging that Mr. Heuchan's

income had at all times been in excess of $325 a month. The hearing was before the Honorable Howard M. Findley, another judge of the King county superior court.

An audit taken by stipulation showed that Mr. Heuchan had engaged in business transactions, mostly in California, between November 1, 1945, and October 31, 1948, which showed a net income for him and his present marital community in excess of twenty-eight thousand dollars. Mr. Heuchan and his present wife then had, and still have, a substantial equity in an apartment house in Salinas, California. Title to this property had been transferred to the present Mrs. Heuchan, but the court held that, so far as Mrs. Fleetwood is concerned, Mr. Heuchan still has a community interest in it.

Judge Findley entered an order April 22, 1949, denying Mr. Heuchan's petition for modification of the interlocutory decree and laying down a formula for the determination of the amount due Mrs. Fleetwood under the interlocutory decree, and further ordering

" . . . that the defendant Norman J. Heuchan furnish to the plaintiff Mabel V. Heuchan monthly a complete statement of the receipts and disbursements of himself and of the community composed of himself and Bernice L. Heuchan, excluding therefrom payments received from the Railway Employees' Retirement Fund, but including receipts and disbursements produced by any and all property which he may have heretofore or may hereafter transfer to his wife Bernice L. Heuchan; and the said Norman J. Heuchan is hereby ordered, for the purposes hereof, to treat the property which he may have heretofore or may hereafter transfer to his wife Bernice L. Heuchan, and the proceeds and avails thereof, as the property belonging to the community composed of himself and Bernice L. Heuchan; and said defendant Norman J. Heuchan is further directed to pay to the plaintiff herein $75.00 per month or 23.08% of one-half of such monthly net income, if such one-half net income be less than $325.00 per month, all until the further order of the Court."

Judge Findley applied that formula to the monthly income of Mr. Heuchan for each month from November 1, 1945, to October 31, 1948, and found that the total amount

due Mrs. Fleetwood for that three-year period was $1,047.78, of which she had been paid $194.45, and gave her judgment for unpaid alimony as of October 31, 1948, in the amount of $853.33.

Early in July of 1949 the $853.33 was paid, together with an additional $91.83, the latter amount being the total of the alimony Mr. Heuchan calculated to be due for the eight months from November, 1948, to June, 1949, inclusive. An immediate protest was made by Mrs. Fleetwood, both as to the amount and the method of accounting. Further requests in August and September for a more adequate accounting were ignored. The accounting sent with the alimony check for September, 1949, was typical, and was as follows:

```
                                    "October 26th. 1949.
          "September, 1949.
     "Rental Income                   $ 388.00
       Expenses, etc.                   328.96
                                      _____
                                      $  59.04
          One half                       29.52
          75/325                          6.81
     "Money Order herewith
                        "N. J. Heuchan [signed]."
```

Mr. Heuchan has the effrontery to argue that such a statement was a compliance with the requirement of Judge Findley's order that he furnish "a complete statement of the receipts and disbursements of himself and of the community composed of himself and Bernice L. Heuchan." Not until after Mrs. Fleetwood commenced the present proceeding, a petition for modification verified November 3, 1949, asking for seventy-five dollars each month and alleging that the alimony provisions of the interlocutory decree were ineffectual and unworkable, did Mr. Heuchan furnish any breakdown as to the character of the disbursements.

The petition was heard by the Honorable Theodore S. Turner, yet another judge of the King county superior court, in April of 1950. His findings stated numerous changes in conditions since the original interlocutory decree of January 15, 1937, and justified a reconsideration of the alimony provision of that decree. He found that Mrs. Fleet-

wood's financial needs amounted to not less than $134.75 on a monthly basis, and that she received monthly payments of $59.75 from the sale of certain property (there being an unpaid balance of approximately $3,000 on that property), and that she had no other resources. He found that Mr. Heuchan and his present wife had an average net income of $171.50 from the apartment house operated by them, and occupied an apartment therein having a reasonable rental value of $70 a month; that Mr. Heuchan received a railway pension of $118.30 a month; and that his present wife earned an average of $20 a week as a beautician. Judge Turner concluded that Mr. Heuchan had the present ability to pay Mrs. Fleetwood the sum of $60 a month, and that, if his financial circumstances improved, he should pay more. Based on those findings, he modified the original interlocutory decree on May 23, 1950, by directing Mr. Heuchan to pay Mrs. Fleetwood $60 a month. It is from that order that this appeal is taken.

Appellant first challenges the decree on the basis that the superior court never acquired jurisdiction in this cause. Appellant's position is that since 1945 he has been a resident of Salinas, California; that his attorney of record in his 1940 and 1948 attempts at modification had withdrawn from the case; and that, consequently, the court acquired no jurisdiction over appellant's person, although a copy of the petition for modification and a certified copy of an order to show cause why the petition should not be granted were served upon him by mail at his Salinas address and were personally served in Seattle upon that attorney.

This service, as made, was in accordance with the manner of service prescribed by the superior court.

Since it is conceded that the appellant did receive the notice of hearing mailed to him, we pass the question of the effect of the service upon the attorney.

It is settled law in this state that the jurisdiction of the court rendering the decree of divorce is continuing as to the custody of children of the parties and as to awarding periodic allowance (alimony) in favor of one party as against the other. *Lanctot v. Lanctot,* 125 Wash. 310, 314,

216 Pac. 356, and cases there cited. Appellant's contention that the courts of Washington acquired no jurisdiction of his person by the service of the petition for modification and motion to show cause upon him in the state of California is not well taken. *Harris v. Harris,* 71 Wash. 307, 128 Pac. 673; *State ex rel. Lucas v. Superior Court,* 193 Wash. 74, 74 P. (2d) 888; see, also, *Harju v. Anderson,* 125 Wash. 161, 215 Pac. 327.

Appellant also entered a plea of *res judicata,* and it is his position that the respondent has to establish a material change in the circumstances of the parties since Judge Findley's order of April 22, 1949, which was not appealed from. Respondent takes the position that she has not heretofore made any application for relief, and that, as both of appellant's petitions for modification were denied and the original interlocutory decree was still in effect, she should be privileged to go back to that order, January 15, 1937, to establish a change in circumstances of the parties. The trial court agreed with respondent.

We are not in accord with the respondent and the trial court on that proposition. Where the same party makes successive applications for modification, appellant's position is clearly the rule. In *Hudson v. Hudson,* 8 Wn. (2d) 114, 111 P. (2d) 573, we said:

"The order made, preceding the one which is now before us, not having been appealed from, is *res judicata,* unless there has been, since that order was entered, a material change in the circumstances of the parties."

See, also, *Bartow v. Bartow,* 12 Wn. (2d) 408, 121 P. (2d) 962; *Jones v. Jones,* 23 Wn. (2d) 657, 161 P. (2d) 890; *Phillipy v. Phillipy,* 28 Wn. (2d) 758, 184 P. (2d) 58; *Snyder v. Snyder,* 219 Cal. 80, 25 P. (2d) 403; *Sims v. Sims,* 34 Hawaii 237.

It is our view that, when a petition for modification of a divorce decree as it relates to the custody of children, support money, or alimony, is before the court, both parties should make known any dissatisfaction with the *status quo* (by proper pleadings) and enable the court to do what the statute contemplates, *i. e.,* make such revision as the circum-

stances may require. Rem. Rev. Stat. (Sup.), § 988-2 [P.P.C. § 23-19]. Or, stated differently, only under the most exceptional circumstances should a party to this type of litigation be entitled to urge as a material change of circumstances any condition or situation that could and should have been brought to the attention of the court at the hearing on a prior petition for modification. Restatement, Judgments, § 1; 30 Am. Jur. 910, 920, Judgments, §§ 165, 178.

Whether this be based on the doctrine of *res judicata* (in 2 Nelson on Divorce and Annulment (2d ed.) 429, § 17.07, it is suggested that that doctrine is not too clearly applicable) or on the equitable doctrine of laches (the failure to take advantage of an opportunity to secure relief), or on the proposition that a court cannot be taken over by one set of litigants for the continued readjudication and reconsideration of their affairs, we are convinced that sound public policy requires such a holding. The test in each case should be: Could and should the facts now relied upon as establishing a change in the circumstances have been presented to the court in the previous hearing?

The modification proceeding before Judge Findley came on for trial in November of 1948. Both parties asked for relief, based upon their interpretations of the word "income" in the agreement approved by the interlocutory decree of January 15, 1937. Mr. Heuchan contended that "income" meant only salary, and that, since he had received no salary, he had no income and owed no alimony. Mrs. Fleetwood contended that his income at all times exceeded $325 a month, and that he owed her some $1,950 in back alimony. To determine what his income had been since he ceased paying $75 a month, by stipulation of the parties an audit was made showing Mr. Heuchan's month-by-month receipts and disbursements from November 1, 1945, to October 31, 1948.

It was not until this audit was filed in the cause (February 11, 1949) that it became apparent that there had been a change in circumstances which made the alimony provision approved by the interlocutory decree unworkable and totally inadequate. The audit showed a net income of

$28,195.07 for three years, an average monthly income of more than $780; and yet, because more than half of the income was realized from the sale of property and was received in two months, the total amount found to be due Mrs. Fleetwood, with alimony computed on the basis of monthly income, was $1,047.78, or approximately $29 a month.

Mrs. Fleetwood's failure to introduce evidence of this character at the hearing in November, 1948, is attributable to excusable ignorance, which generally is a satisfactory explanation of a failure to bring changed circumstances to the attention of the court. See *Bartow v. Bartow,* 170 Wash. 409, 412, 16 P. (2d) 614, 615; *Phillipy v. Phillipy, supra,* both quoting 19 C. J. 273, Divorce, § 619. (A comparable statement appears in 27 C. J. S. 989, Divorce, § 239.) After the audit was filed, respondent immediately moved the court for leave to reopen the trial and to petition the court for alimony of $75 a month, without reference to the salary or monthly income of the appellant. Judge Findley denied that motion.

It seems to us that respondent made that motion at the earliest possible moment, although Judge Findley is subject to no criticism for denying it, as the case had been tried in the preceding November and was supposedly concluded except for the audit, and a new issue would have been injected at that late date into a case supposedly concluded.

Moreover, it was not until Judge Findley entered his findings, conclusion, and order that the full extent of respondent's dilemma due to the changed circumstances became apparent, for the audit included the appellant's railway pension as income, and the judge's holding that the pension "is not income within the meaning of said Decree," decreased the amount of the alimony she had expected to receive by $27.30 a month. We mention this, not in criticism of the holding but to show that the full extent and character of the inadequacy and unworkability of the alimony provisions of the interlocutory decree had not theretofore been fully apparent. Respondent was certainly en-

titled to present those changed circumstances to the court in the present proceeding.

The next legal hurdle which appellant sets up is the contention that the trial court could not disregard the property settlement agreement, which in effect provided for monthly payments to the wife of 23.08% of the appellant's monthly income (with a maximum of $75 a month), and that the court erred when, in lieu of payments as called for in the contract, it substituted a fixed and definite sum to be paid monthly.

■ The property settlement agreement is no hurdle, however, because, when appellant stipulated at the time of his first petition for modification that the payments provided for in the property settlement agreement were alimony, the payments ceased to be a matter that could be controlled by contract between the parties and became subject to such modification, alteration, and revision by the court "as circumstances may require," to quote the language of the then governing statute. Rem. Rev. Stat. (Sup.), § 988-2; *Troyer v. Troyer,* 177 Wash. 88, 30 P. (2d) 963; *Von Herberg v. Von Herberg,* 6 Wn. (2d) 100, 114, 106 P. (2d) 737; see annotations, 58 A. L. R. 639, 109 A. L. R. 1068, 166 A. L. R. 678. Appellant himself recognized this when he twice asked the court to relieve him of payments under what he now says is a contractual obligation incapable of modification.

■ We have indicated that, when the changed condition of the parties has been established, the courts are concerned with two issues: the needs of the party requiring alimony, and the ability of the other party to make payments. See *Duncan v. Duncan,* 25 Wn. (2d) 843, 852, 172 P. (2d) 210, with its reference to *Bartow v. Bartow,* 12 Wn. (2d) 408, 121 P. (2d) 962, and cases therein cited.

■ The needs of respondent need little elaboration. She lives in a small home in Spokane, to which her daughter has title but in which respondent has a life estate. Her almost constant coughing makes it necessary for her to live alone; she has suffered for years from tic douloureux, migraine headaches, and bronchial asthma; her eyes have recently deteriorated badly; she is subject to sudden spells

in which she loses consciousness and collapses, making it impossible for her to care for children; she has no earning capacity. We have heretofore referred to the trial court's findings as to her present financial needs, and those findings are fully substantiated by the evidence.

█ With reference to the trial court's findings as to appellant's ability to pay $60 a month, it is contended that the trial court erred in taking into account as one of his resources his railway pension of $118.30 a month, because the railway retirement act, U. S. C. A., Title 45, Railroads, § 228l, explicitly provides:

"No annuity or pension payment shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated."

No one is at the present time attempting to subject Mr. Heuchan's railway pension to garnishment, attachment, or other legal process. That the pension is a resource which the court may consider in determining whether or not he is able to make certain alimony payments seems patent to us, as it did to the Pennsylvania court in *Commonwealth v. Berfield*, 160 Pa. Super. 438, 51 A. (2d) 523, in which Judge Hirt, speaking for the court, discussing a railway pension annuity and the same statute, said:

"The provision of the act exempting the fund from attachment was not in aid of delinquent husbands seeking to evade their responsibilities but was intended solely to relieve the Federal authorities as administrators of the fund from the annoyance of attachment of pension or annuities in their hands, payable to railroad employees after retirement.

"The lower court properly took into consideration the amount of the annuity payable to respondent in determining his sufficient ability to support his wife. Congress did not intend to restrict or in any way affect the right of a wife to enforce payment of her support out of funds or property, whatever their source, in the possession of her husband."

For a review of numerous cases dealing with the interpretation placed on comparable statutes in like cases, see

the recent case of *In re Bagnall's Guardianship* (1947), 238 Iowa 905, 29 N. W. (2d) 597.

■ Appellant urges that, in any event, Judge Findley, in his order of April 22, 1949, held that the railway pension could not be taken into account in determining his ability to pay alimony, and, no appeal having been taken from that order, it is now *res judicata* of that issue.

What Judge Findley actually did in the order referred to and the findings supporting it, was to deny appellant's petition to modify the original interlocutory decree of January 15, 1937, and to interpret what was meant by "income" within the meaning of the property settlement agreement referred to in that decree. We are not now attempting to interpret that property settlement agreement, as the trial court has held that changed conditions render it ineffectual and unworkable so far as the present situation of the parties is concerned; and the fact that the pension was held not to be "income" under that agreement does not prevent its being recognized as an asset possessed by the appellant which has a bearing on the amount of alimony he is in a position to pay in accordance with what "circumstances may require." *In re Bagnall's Guardianship, supra.*

Appellant also complains that, when the trial court found that he and his present wife have an average net income of $171.50 a month from the operation of their apartment house in Salinas, California, it did not allow as an expense item depreciation in the amount of $99.96 each month, and erroneously included $70 as the rental value of the apartment which he and his present wife were occupying.

■ No doubt the Heuchans are entitled to the claimed deduction of $99.96 a month for depreciation when computing their taxable income, but we are not limited to their taxable income in determining appellant's ability to make alimony payments. It is conceded that this $99.96 is not paid into any fund for depreciation but is merely a bookkeeping entry; it is available to and is used by the Heuchans for their own purposes. The trial court was fully justified in taking that fact into consideration when determining

the amount which appellant is able to pay respondent as alimony.

As to the reasonable rental value of the apartment occupied by the Heuchans, it is a larger apartment than those rented for $55, and comparable accommodations were rented for $70. We feel that the trial court was justified in placing that value on the use of the apartment in question. But even if the rental value of the apartment was $55 a month, we could not escape the conclusion that appellant, under the attendant circumstances, is able to pay $60 a month to respondent in accordance with the decree appealed from. His ability to pay alimony cannot be measured by monthly income, as was adequately demonstrated by the audit covering the period from November 1, 1945, to October 31, 1948, during which he made some $28,000 and paid Mrs. Fleetwood, voluntarily, $194.45. The evidence in this case discloses a determination on the part of the appellant not to provide support for his former wife, rather than lack of ability to do so.

In our view of the evidence we have given no consideration to the evidence which appellant urges was erroneously admitted, and we have considered all the evidence claimed by him to have been erroneously rejected; and we are satisfied that no prejudice resulted from the trial court's rulings on the admissibility of evidence, and that there was no abuse of discretion in its refusal to grant a new trial.

The order appealed from is in all respects affirmed.

SCHWELLENBACH, C. J., BEALS, DONWORTH, and FINLEY, JJ., concur.