Richard E. **CARPENTER**, Appellant,

v.

Olga Y. **CARPENTER**, Appellee.

No. 56314.

Supreme Court of Oklahoma.

Jan. 11, 1983.

As Corrected Jan. 21, 1983.

Rehearing Denied Feb. 15, 1983.

S. Thomas Adler, Short Barnes Wiggins Margo Adler & Worten, Oklahoma City, for appellant.

Fagin, Hewett, Mathews & Fagin, Warner E. Lovell, Jr., Betty J. Garrett Pherigo, Oklahoma City, for appellee.

LAVENDER, Justice:

Both parties appeal from a divorce judgment wherein a decree of divorce was rendered to each of the parties on the grounds of incompatibility. The parties will be referred to as they appeared below, Richard E. Carpenter being plaintiff, and Olga Y. Carpenter the defendant.

At the time of trial, plaintiff was sixty-two years of age and defendant sixty-one, the parties having been married to each other for some thirty-six years. At the time of the marriage, plaintiff was completing his qualification to become a practicing physician and a specialist in the field of neurology. Plaintiff was one of the founders and president of Medical Neurologists, Inc. (MNI) which corporation employed plaintiff and other physicians in an Oklahoma City, Oklahoma, based firm. Defendant was briefly employed during the early years of the marriage and in clerical work since the separation of the parties, from which she now receives pre-tax earnings of $614 per month. In the interim, defendant devoted herself to the rearing of children, running the home, and volunteer work. Plaintiff's income from his profession has varied over the years, attaining a maximum during the year 1979 of $91,796.

In 1970, plaintiff developed angina, a heart disease also known as coronary arteriosclerosis, and a recent heart attack, and has been advised by his physician to take a leave of absence and retire from medical practice. Defendant has been undergoing psychoanalysis since the end of September 1978.

On November 14, 1980, a decree was entered by the trial court.

Defendant was granted support alimony, terminable on defendant's death or her remarriage, in the total amount of $162,000, payable $1,500 a month commencing December 1, 1980, and a like sum monthly thereafter for 48 months, said monthly payments to be adjusted to $1,250 for the next 72 months.

The separate property of the parties was set aside to each.

Out of the total property determined to be jointly acquired during the marriage of $633,485, plaintiff was awarded 47.4% and defendant 52.8%, as follows:

TO PLAINTIFF:

| | |
|---|---|
| Savings account | $ 968. |
| Checking account | 6,000. |
| Physicians & Surgeons debenture bonds | 23,000. |
| Life insurance, John Hancock | 11,975. |
| Life Insurance, U.S. Govt. Life | 2,479. |
| Boat | 3,000. |
| Twin Hills stock | 3,000. |
| M.N.I. stock | 30,707. |
| Physicians & Surgeons Building Investments, | 26,403. |
| M.N.I. receivables | 22,863. |
| 1976 Volvo | 6,700. |
| Pension and Profit Sharing Plans | 163,278. |

TO DEFENDANT:

| | |
|---|---|
| Republic Bank account | $ 10,673. |
| Eufala Bank account | 2,310. |
| Certificates of Deposit | 13,016. |
| Money Market Certificate | 10,000. |
| Home | 135,000. |
| Bonds, Harris County, Texas | 8,850. |
| Okla. City Series B | 19,300. |
| Okla. Industrial Authority | 6,475. |
| Oklahoma Turnpike Authority | 8,100. |
| Valdez, Alaska | 7,512. |
| Williamson, Texas, | 4,325. |
| Life Insurance: | |
| Prudential | 7,185. |
| Prudential | 7,393. |
| New York Life | 3,753. |
| John Hancock | 6,677. |
| John Hancock | 6,173. |
| John Hancock | 12,080. |
| John Hancock | 2,666. |
| Connecticut Mutual | 750. |
| Eufala property | 60,700. |
| Mower and rototiller | 1,000. |
| 1977 Dasher | 4,190. |

In addition, the plaintiff was ordered to pay one-half of the attorney fees of defendant's attorney, the total fee being $17,500.

The several issues raised on the appeal and cross-appeal will be considered.

## I.

IS PLAINTIFF'S INTEREST IN MEDICAL NEUROLOGISTS, INC. PENSION AND PROFIT SHARING PLAN PROPERTY ACQUIRED BY THE PARTIES JOINTLY WITHIN THE MEANING OF 12 O.S.1981, § 1278?

At the time of the divorce and prior thereto, Medical Neurologists, Inc. maintained a pension and profit sharing plan in which plaintiff was a participant. All contributions to the plan are made by the employer, with benefits being payable to a participant only upon his death, disability, or retirement. The value of the participant's share in the plan fluctuates from

time to time, depending in part upon the success of the plan's investment program. Under the terms of plaintiff's employment agreement with Medical Neurologists, Inc., plaintiff is forced to retire at age 70, or continue employment under an arrangement whereby plaintiff's income is greatly reduced while maintaining his full proportionate share of overhead and operating expenses to such a degree that his continued employment after reaching age 70 would be highly unlikely. Upon retirement, the plan permits optional withdrawals therefrom by plaintiff, such withdrawals constituting ordinary income taxable to plaintiff during the year when withdrawn. The value attributable to plaintiff's proportionate part in the plan at the time of the divorce was $163,278. The trial court held that plaintiff's interest in the plan was property jointly acquired by both parties during the marriage, and awarded the same to plaintiff with an off-setting equivalent being made to defendant in other properties.

Section 12 O.S.1981, § 1278, in pertinent part, provides:

"As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof."

This Court has on five occasions considered various aspects of pension plans in their relation to division of property and alimony in divorce proceedings.

In *Roberts v. Roberts,* Okl., 357 P.2d 980 (1960), the plan under consideration was a so-called "Provident Fund" whereby the husband contributed 10% of his monthly salary to the fund with match contributions by his employer. No withdrawal from the fund could be made unless defendant leaves his employment or retires. We held: "Of course, defendant could not withdraw and pay over to plaintiff in a lump sum any of the $30,000 and more accumulated in the Provident Fund with his employer. However, plaintiff could have been awarded an allowance payable monthly as alimony in lieu of a division of this fund. We believe plaintiff is entitled to such an allowance in the total sum of $12,100" (payable in 121 equal monthly installments of $100 each).

In *Holeman v. Holeman,* Okl., 459 P.2d 611 (1969), an appeal was brought on the question of whether the trial court awarded an excessive and unwarranted amount of alimony to plaintiff, and whether the award of the jointly acquired property to the defendant was inequitable and unfair to the plaintiff.

The plaintiff had worked for the railway mail service for some 14 years and had accumulated a retirement fund of $2,375. Upon changing to the Postal Service he continued his retirement fund contributions for the next 11 years and was still contributing at the time of trial. On whether the retirement fund accumulations were to be treated as jointly acquired property, the Court said: "If the retirement fund is divided at this time as jointly acquired property this would in effect destroy the plaintiff's future livelihood and means of complying with the alimony award. The trial court obviously took into consideration the retirement fund in regard to setting an award for alimony out of plaintiff's future income or earning capacity. It would be unfair to divide the retirement fund and then make a provision for payment of the majority of the alimony award out of his monthly retirement income."

In *Baker v. Baker,* Okl., 546 P.2d 1325 (1976), appellant was a Second Lieutenant in the U.S. Army at the time of the marriage. After 17 years of marriage, divorce proceedings were instituted, at which time appellant was a retired Lieutenant Colonel receiving $812.85 army retirement benefits per month. The court granted each party a divorce from the other on the grounds of incompatability.

Primarily on the authority of *Holeman,* it was determined that the trial court erred in considering the husband's pension for determination of jointly acquired property, but was correct in considering the pension in setting support alimony.

■ However, upon further consideration, we now find that our reliance in *Baker* (at p. 1326) upon *Holeman* and the cases cited in *Heuchan v. Heuchan,* 38 Wash.2d 207, 228 P.2d 470, 22 A.L.R.2d 1410 for the observation that: "All of these cases would, by implication, rule out the consideration of a pension as property acquired during coverture and subject to division between the parties," is misplaced as being too broad for the reasons hereinafter set forth. *Holeman* is certainly authority for the proposition that a pension may not be divided between spouses as jointly acquired property *and* in addition be the basis for awarding support alimony, and for the proposition that if the husband's financial circumstances are such that a division of a pension as jointly acquired property would destroy his future livelihood and means of complying with an alimony award, it would be unfair to divide the pension and then make provision for the payment of the majority of an alimony award out of his monthly retirement income. It does not follow, however, that all pensions are necessarily the separate property of the spouse who acquires them. Neither can it be said, however, that all pensions are necessarily joint property subject to division. In some instances, specific statutory exceptions are controlling.

In *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), the husband was a participant as a railroad employee in retirement benefits under the Railroad Retirement Act of 1974 pursuant to Congressional enactment. The United States Supreme Court held that to treat benefits accruing thereunder as jointly acquired property in a divorce proceeding would frustrate the clear intention of Congress that such benefits were the sole property of the person earning them, and that state law or policy to the contrary must yield to federal supremacy.

In *Umber v. Umber,* Okl., 591 P.2d 299 (1979), the wife claimed a right to a division of the husband's social security benefits because she had contributed to the payment of FICA taxes by her joint industry in a pharmacy owned by the parties, but managed by the husband. Following *Hisquierdo v. Hisquierdo, supra,* (involving the Railroad Retirement Act Plan) the Court said the pertinent questions to be considered are: whether the right of the spouse to benefits conflicts with the express terms of federal law; and whether its consequences sufficiently inure the objectives of the federal program to require non-recognition. Answering both questions in the affirmative, this Court held that social security benefits are not an item to be considered in determination of property settlement; they are the separate property of the employee-spouse.

Another statutory exemption was considered in *Udall v. Udall,* Okl., 613 P.2d 742 (1980). There the issue was whether the accumulated funds of a member of the Oklahoma Public Employees Retirement System can be executed upon to satisfy a non-delinquent support alimony judgment when 74 O.S.1971, § 923 exempts retirement benefits from execution, garnishment, or attachment or any other process or claim.

It was there held that the cardinal rule for construction of a statute is to ascertain the intention of the Legislature by consideration of the statutory language. Exceptions should not be read into a statute which are not made by the legislative body. Since the act under consideration clearly exempts Oklahoma Retirement Benefits from "taxation, execution, garnishment, attachment, process, or claims," funds accumulated in the Oklahoma Public Employees Retirement System are exempt from execution to satisfy a support alimony judgment.

No statutory immunity, either express or implied, is implicated in the pension plan before us. Neither *Hisquierdo* nor *Umber* are therefore involved. We have only to determine whether a pension, absent such legislative impedimenta, is property jointly acquired during the marriage.

In addressing this issue, we do not deem it significant whether the pension is "vested" in the sense that it is now due and owing, whether it is conditional or contingent upon continued employment for a prescribed period or terminable upon the occurrence nor non-occurrence of some future event. (See *In Re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976); *Hutchins v. Hutchins,* 71 Mich.App. 361, 248 N.W.2d 272 (1977).) In any of these events, it is a valuable right which has been purchased through joint efforts of the spouses to the extent that it has been acquired or enhanced during the marriage, and as such becomes jointly acquired property during the marriage. *DeRevere v. DeRevere,* 5 Wash.App. 741, 491 P.2d 249 (1971).

■ The practical problems inherent in "dividing" a pension which is unmatured or contingent at the time of a divorce are resolved within the language of 12 O.S. 1981, § 1278 itself. It must be divided between the parties "as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof." The exigencies of a particular case can be best determined by the trial court, and unless the division of jointly acquired property made by the trial court in a divorce action is against the weight of the evidence and is inequitable, it will not be reversed or modified on appeal. *Roberts v. Roberts, supra.* As we said in *Peters v. Peters,* Okl., 539 P.2d 26 (27) (1975): "The trial court has wide discretion as to property division in divorce proceedings (citation omitted). An action for divorce, alimony and division of property is one of equitable cognizance and the trial court's judgment will not be disturbed on appeal unless found to be clearly contrary to the weight of the evidence. In a divorce action the trial court is vested with discretion in making a division of jointly acquired property and in granting of alimony. In the absence of abuse of discretion judgment of trial court making a division of such property and awarding or de-

nying alimony will not be set aside upon appeal (citation omitted)."

■ We find no abuse of discretion on the part of the trial court in awarding the pension to plaintiff and in awarding jointly acquired property of equivalent value to defendant.

The opinions expressed in *Carlton v. Carlton,* Okl.App., 648 P.2d 1280 (1982) and in *Bowman v. Bowman,* Okl.App., 639 P.2d 1257 (1981) are disapproved insofar as the same are inconsistent with the views herein expressed.

## II.

WAS THE SUPPORT ALIMONY AWARD TO DEFENDANT AN ABUSE OF DISCRETION OR SO CONTRARY TO THE WEIGHT OF THE EVIDENCE AS WOULD REQUIRE REVERSAL ON APPEAL?

■ Various considerations taken into account by this Court in reviewing alimony awards, both as to whether alimony should be awarded and the amount and time of payment thereof, are set forth in *Agent v. Agent,* Okl.App., 604 P.2d 862 (1980), and need not be reiterated here. Suffice it to say that a review of the record in this case together with a consideration of all of the factors governing the award of support alimony leads us to the conclusion that the alimony award to the defendant by the trial court was not such an abuse of discretion or so against the weight of the evidence as would justify a reversal on appeal within *Roberts v. Roberts, supra,* and *Peters v. Peters, supra.*

## III.

IN APPORTIONING THE JOINTLY ACQUIRED PROPERTY BETWEEN THE PARTIES, DID THE TRIAL COURT COMMIT ERROR IN FAILING TO TAKE INTO CONSIDERATION THE ULTIMATE FUTURE TAX CONSEQUENCES TO PLAINTIFF IN DISBURSING THE MNI RECEIVABLES TO THE PLAINTIFF?

■ In apportioning jointly acquired property between the parties, the trial court

awarded the MNI receivables to the plaintiff at their value as at the time of the decree. Plaintiff urges error in not adjusting their value by giving effect to prospective tax consequences to plaintiff upon his ultimate receipt of the same. Plaintiff argues that the receivables are payable to plaintiff upon his death or retirement at which time they will be taxable to him as ordinary income, and that in apportioning the receivables to him, they should have been apportioned at a value which would have recognized the prospective tax consequences. Plaintiff cites no authority in support of his argument. However, in *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257, 74 A.L.R.3d 613 (1975), the New Jersey Supreme Court was confronted with a similar issue in connection with a law partnership in which one of the litigants was engaged at the time of the divorce decree. It was there held:

> "The further contention is made that if accounts receivable are to be considered at all, then their value should be diminished by the estimated amount of federal income tax that defendant will be required to pay in respect of these accounts, or some part thereof, as they reach him in the form of later partnership distributions. This argument [also] misconceives the purpose for which the accounts receivable are being considered—to fix a total value of defendant's partnership interest. The value of the latter asset is in no way diminished by the fact that defendant may thereafter be called upon to pay an income tax resulting in substantial part from his receipt of income from the partnership. The fact that he will pay a tax on these receipts may be a relevant consideration when considering whether a distribution is equitable and is clearly relevant with respect to the determination of alimony, but it does not affect the value of defendant's interest in the law firm."

In the case before us, the income tax liability of the distributions to the plaintiff when made is certain. But the calculation of the income tax liabilities are uncertain both in quantum and as to the time when they accrue. We cannot speculate as to the tax bracket the plaintiff will be in when distributions to him are made, or as to which future tax years they will be applied. Under such circumstances, we hold that it was not an abuse of discretion on the part of the trial court in determining the value of the MNI receivables as at the time of trial.

## IV.

IN APPORTIONING JOINTLY ACQUIRED PROPERTY, WAS IT ERROR FOR THE TRIAL COURT TO APPORTION PLAINTIFF'S INTEREST IN MNI CORPORATE STOCK AT BOOK VALUE?

MNI is a closely held, professional corporation involved in providing medical services and in facilitating the practice of medicine for its shareholders. Its shares are owned equally by four physicians, one of whom is the plaintiff. The four physicians are employees of MNI whose salaries are adjusted to reap maximum tax benefits to the shareholders. Typically, its accrued profits are paid out in the form of salaries. In apportioning the jointly acquired property, the trial court relied primarily upon "book value" of the shares attributable to the plaintiff at the time of trial.

Defendant in her cross-appeal asserts error in the use of "book value," alleging that "earnings value" based upon a formula of five times annual earnings of the corporation should have been used.

Placing a precise value upon an interest in a professional corporation or partnership where the owner or partner involved contemplates a continuation of the relationship after the divorce is a difficult matter. And where, as here, most recent "sales" and the manipulative nature of the asset are so fraught with variables and uncertainties as to make them unreliable in determining value, the difficulties are compounded. In the case before us, plaintiff's 25% stock ownership in MNI is subject to a contractual obligation to sell it upon his death, disability, retirement, or termination of em-

ployment for any reason for book value. In *Stern v. Stern, supra,* the Court was confronted with a similar problem, and resorted to the contractual provision applicable upon the death of the participant as being the most equitable method of determining value at the time of divorce. Under the special circumstances present here, we are inclined to agree. We therefore hold that the trial court did not abuse its discretion or go against the weight of the evidence in determining the value of plaintiff's shares in MNI stock at book value.

### V.

WERE THE REPUBLIC BANK AND EUFALA BANK ACCOUNTS, THE $13,016 CERTIFICATE OF DEPOSIT, AND THE $10,000 MONEY MARKET CERTIFICATE JOINTLY ACQUIRED PROPERTY?

■ Defendant alleges error in the trial court's finding that the Republic Bank and Eufala Bank accounts, the $13,016 certificate of deposit, and the $10,000 money market certificate were jointly acquired property. Suffice it to say that the evidence as to the source of these items and whether there had been a commingling of moneys making up the items, although undisputed, was inconclusive. A question of fact was presented to the trial court and it was determined adversely to the defendant. We cannot say from a review of the evidence that the trial court's findings were against the weight of the evidence. *Phillips v. Phillips,* Okl., 556 P.2d 607 (1976).

### VI.

WAS IT ERROR FOR THE TRIAL COURT TO ORDER PLAINTIFF TO PAY ONE-HALF OF DEFENDANT'S ATTORNEY'S FEES?

■ Both parties allege error on the part of the trial court in ordering and determining that plaintiff should pay one-half of defendant's attorney's fees. The amount of the fee as determined by the trial court is not in dispute.

*Phillips v. Phillips, supra,* is a case factually similar to the case at bar. There we said: "In *McCoy v. McCoy,* Okl., 429 P.2d 999 (1967) this court said the trial court was vested with a wide discretion. It should consider the parties, and all of the circumstances in the case, including the means and property of the respective parties under the property division. Before such an order will be reversed, it must clearly appear that the trial court abused its discretion." As in *Phillips,* no such abuse is found in this case.

The judgment of the trial court is affirmed.

SIMMS, V.C.J., and IRWIN, HARGRAVE, and WILSON, JJ., concur.

DOOLIN and OPALA, JJ., concur in part and dissent in part.

BARNES, C.J., and HODGES, J., dissent.

BARNES, Chief Justice, dissenting:

While I concur with the majority regarding the inclusion of the pension fund in the marital estate, I must respectfully dissent to the double charge against the pension allowed by the Court in this case. As noted in the majority opinion, in the past we have held that such funds are not to be treated as jointly acquired property, but may be considered as a factor in determining the amount of support alimony. To be consistent we should now hold that since the pension fund is to be treated as jointly acquired property, it should not be considered as a factor in determining the amount of support alimony.

I would also require the trial court to take into account the tax consequences of the distribution of the fund. The trial court based the property division upon the value of the fund at the time of trial without allowing any adjustment for taxes which the appellant will be required to pay when he receives the benefits.

In *Stern v. Stern,* quoted by the majority, the New Jersey Supreme Court said:

"The fact that he will pay a tax on these receipts *may be relevant consideration when considering whether a distribution*

*is equitable* and is clearly relevant with respect to the determination of alimony . . ." (emphasis added).

I believe that the language is applicable to the case at bar. The trial court should have made allowances for the taxes which appellant will pay on the income from the fund. By using the gross dollar figure of the fund rather than a net figure, the Court is unfairly penalizing appellant. I would remand to the trial court with directions to determine the amount of alimony for support without considering the amount appellant would receive from his retirement fund and to determine the net amount appellant would receive from his retirement fund and then divide that between the parties.

I am authorized to state that OPALA, J., joins me in this dissent.