**Bonnie Martha PULLIAM,**
**Plaintiff–Appellant,**

**v.**

**Loren Reid PULLIAM, Jr.,**
**Defendant–Appellee.**

**No. 68011.**

Supreme Court of Oklahoma.

July 17, 1990.

Harold B. McMillan, Jr., Warren, Ricks & Associates, P.C., Oklahoma City, for plaintiff-appellant.

M. Joe Crosthwait, Jr., Midwest City, Thomas A. Wallace, Oklahoma City, for defendant-appellee.

OPALA, Vice Chief Justice.

The issue presented on certiorari is whether the trial court correctly assigned to the husband's federal civil service retirement benefits a value equal to the amount of his actual accumulated contributions to the retirement fund. We answer in the negative.

## THE ANATOMY OF LITIGATION

The parties to this suit had been married for thirty-three years when the wife, appellant herein, sought a divorce. Four children were born of the union, all of whom have reached majority. The husband, a civilian employee at Tinker Air Force Base since 1958, was earning an annual salary of $50,162. He is covered by the Civil Service Retirement Annuity Plan and, at the time of trial, had contributed $42,200 to the plan. The wife had been employed intermittently during the marriage.

The trial court granted the divorce and valued spousal property at $243,109. The share set apart to the wife was valued at $121,687 and that to the husband at $121,422. The trial court awarded the wife support alimony of $38,400 and ordered the husband to pay $2,600 of the wife's $5,300 attorney's fees and costs. The husband's civil service retirement benefits were assigned a value of $42,200.

The wife appealed, asserting error in the trial court's valuation of the husband's retirement plan as equal to his actual contributions to the plan ($42,200) rather than the plan's enhanced value on maturity. The Court of Appeals affirmed the trial court's valuation of the husband's retirement plan, holding that the trial court had not abused its discretion under *Carpenter*

1. Okl., 657 P.2d 646 [1983].

*v. Carpenter.*[1] The wife then sought corrective relief by certiorari.

## VALUATION OF THE HUSBAND'S DEFINED–BENEFIT RETIREMENT PLAN

■ The husband's retirement plan is a *defined benefit plan,* i.e., one that promises to pay a specified amount to each employee who retires after a set number of years of service. The benefit plan is partially funded by obligatory deductions from the husband's basic pay. Those deductions, coupled with the employer's contributions, are combined to yield an annuity which will be paid to the husband upon retirement. The annuity amount is based on the specifications of the retirement plan which include, but are not limited to, the employee's average pay, age and years of employment.

The amount of money the husband will receive under the plan depends upon when he retires. If he retires at age 55 (July 7, 1990), he will be eligible to receive an annual Civil Service Retirement Annuity of $24,542. If he retires or terminates his employment before reaching age 55, he may opt either to (1) withdraw the amount he contributed to the plan ($42,200) or (2) leave the contributions in the fund until he reaches the age of 62. Then he would be eligible to receive annual civil service annuity benefits of $22,269 (with survivor's benefits) or $24,542 (without survivor's benefits). The husband testified at trial that he had set no definite retirement date.

The wife's expert witness testified that the present value of the husband's benefits, based on a retirement age of 62, was $156,124.[2] He calculated the present value of the fund by using both a survival and an interest rate assumption. The possibility of the husband not living to be 62 was accounted for in the calculation.

This court has previously held that both private and military pensions should be included as property jointly acquired during

2. The wife's actuarial expert was a member of American Academy of Actuaries. He had stud-

marriage,[3] but it has not specifically settled the valuation of retirement funds. The issue presented in this case is hence one of first impression.

Other courts addressing the issue have determined that a defined benefit plan should not be valued at the amount of accumulated contributions.[4] This type of valuation places an unrealistically low value on pension rights in a defined benefit plan because the contributed amount represents "only a small fraction of the anticipated value of and income from" the plan.[5]

It appears unfair to award the wife $21,100 (one half of $42,200) in the division of her husband's retirement benefits, when the husband will most likely receive more than that sum in one year ($24,542).

The trial court appears to have assumed that the husband would immediately leave his job and withdraw his contributions. There is no evidence in the record to suggest that the husband planned to retire early. He has participated in the plan for nearly 30 years and is unlikely to deprive himself of the plan's benefits by retiring before age 55. It is improper to assume, for purposes of computing the value of pension benefits, that the husband would leave public service and withdraw his contributions prior to retirement.[6] We therefore hold that the trial court erred in assigning to the pension benefits a value equal to the amount of accumulated contributions.

The wife argues the trial court was required to accept, for want of better evidence, the expert's testimony as to the value of the pension rights. We hold that the court could properly reject the actuary's figure as an inappropriate measure of the husband's pension rights, but it was clearly erroneous to find that the pension rights were worth no more than the accumulated contributions.

Division of spousal property is a matter of trial court discretion. In determining a valuation method, the trial court may consider the method of distribution. Two basic methods are available for distributing pension benefits upon marriage dissolution—the *present value* and *deferred distribution* methods.[7]

■ Under the *present value method* (also called the immediate offset method), the pension is awarded to the employee, and the non-employee receives other spousal property or money.[8] This method has the advantage of eliminating any future contact between the parties, the court or the employer. One drawback is that the present value method requires the pension to have an ascertainable present value to offset equivalent spousal assets. Another drawback occurs when there is insufficient spousal property. In the latter event, the employee is forced to pay a lump sum equal to the present value of the pension. This may be difficult if the employee lacks

---

ied and applied actuarial science for more than 25 years.

**3.** *Carpenter v. Carpenter, supra* note 1 at 650–651; *Stokes v. Stokes,* Okl., 738 P.2d 1346, 1348 [1987].

**4.** See, e.g., *Dewan v. Dewan,* 17 Mass.App. 97, 455 N.E.2d 1236, 1239 [1983], appeal after remand 506 N.E.2d 879 [Mass.1987]; *Cole v. Cole,* 561 A.2d 1018 [Me.1989]; *Kis v. Kis,* 196 Mont. 296, 639 P.2d 1151, 1153 [1982]; *In re Marriage of Barter,* 65 Or.App. 416, 671 P.2d 1188, 1190 [1983]; *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871, 887 [1987]; *Stevenson v. Stevenson,* 511 A.2d 961, 967 [R.I.1986]; *Copeland v. Copeland,* 91 N.M. 409, 575 P.2d 99 [1978]; *Minnis v. Minnis,* 54 Or.App. 70, 634 P.2d 259, 262 [1981].

**5.** *Day v. Day,* 40 Ohio App.3d 155, 532 N.E.2d 201 [1988].

**6.** *Minnis v. Minnis, supra* note 4 at 262; see also, *Helber v. Helber,* 180 Ill.App.3d 507, 129 Ill.Dec. 426, 428, 536 N.E.2d 110, 112 [1989]. In *Helber* the court held that a husband's pension rights could not be valued as if he had stopped working at the date of dissolution when, in fact, he testified that he planned to continue working until age 60.

**7.** See generally, Spector, "Methods of Distribution Pension Benefits," 4 Okl.Fam.L. Update 6 [Oct.1989].

**8.** In *Carpenter v. Carpenter, supra* note 1 at 651, we hold that it was not abuse of discretion on the part of the trial court to distribute the property according to the present value method.

the liquid assets necessary for a lump sum payment.[9]

■ Under the *deferred distribution method,* the non-employee shares in the retirement benefits when the employee becomes eligible for them. The court typically determines the non-employee spouse's percentage of the future pension benefits which are attributable to the marriage. This determination should be made at the same time other jointly acquired property is divided.[10] An advantage of the deferred distribution approach is that the present value of the pension fund need not be determined. The major disadvantage is that a final resolution is not reached at the time of the divorce.

Numerous courts allow both methods of distribution. The majority of them prefer the finality of the present value method, but acknowledges that a deferred distribution may be appropriate in cases where present value cannot be determined or where immediate payment would unduly burden the employee.[11] The minority prefer the deferred distribution method.[12]

■ We hold that the present value method is preferable where pension valuation is not unduly speculative, and where, at the time of divorce, sufficient assets are available to divide the present value of retirement benefits without causing an undue hardship to the employee. The trial court has discretion to decide whether the described impediments exist. If one or more of them is found, then the trial court may distribute the assets according to the deferred distribution approach. Under this approach, the trial court at the time of trial should award each spouse an appropriate percentage of the pension.

It should be noted that the court hesitates to dictate any specific technique for distributing pension benefits in a divorce because each pension plan presents a different set of problems.

■ Because the trial court's assessment does not reflect the true value of the pension, the decree must be reversed insofar as it affects alimony and spousal property division. On remand, the trial court must determine, from the evidence presented by both parties, the pension fund's present value. It is recognized that actuarial experts can apply some rules of probability as appropriate evidence. But the trial court should also consider intangible factors such as work instability, discharge, voluntary pre-retirement work termination, or the possibility of early death due to illness in determining the valuation of the present worth of the future benefit expectancy. The trial court in its discretion may decide what present value is "just and reasonable".[13]

If a value can be ascertained and if the trial court determines that the husband's spousal property is sufficient to offset the court-established present value of the retirement plan, then the property should be distributed based on the present value method. Because the value of the pension could have significant impact on the division of the spousal property awarded by

---

**9.** *Moore v. Moore,* 114 N.J. 147, 553 A.2d 20, 29 [1989].

**10.** In some jurisdictions the determination of each spouse's share in a nonvested retirement plan is delayed until the pension vests. *Laing v. Laing,* 741 P.2d 649, 658 [Alaska 1987]; *but see, In re Marriage of Britton,* 141 Ill.App.3d 588, 96 Ill.Dec. 43, 45, 490 N.E.2d 1079, 1081 [1986], where court holds that the trial court must decide each spouse's share of a pension during equitable distributions.

**11.** *Moore v. Moore, supra* note 9; *Cross v. Cross,* 363 S.E.2d 449, 455 [W.Va.1987]; *Broadhead v. Broadhead,* 737 P.2d 731, 738 [Wyo.1987]; *Dewan v. Dewan, supra* note 4; *Hodgins v. Hodgins,* 126 N.H. 711, 497 A.2d 1187, 1190–1191 [1985]; *Hatcher v. Hatcher,* 129 Mich.App. 753,

343 N.W.2d 498 [1983]; *DeMasi v. DeMasi, supra* note 4 at 886; *Fastner v. Fastner,* 427 N.W.2d 691, 698 [Minn.App.1988].

**12.** *In re Marriage of Hobbs,* 110 Ill.App.3d 451, 66 Ill.Dec. 203, 205, 442 N.E.2d 629, 632 [1982]; *Sims v. Sims,* 358 So.2d 919, 924 [La.1978]; *Bailey v. Bailey,* 745 P.2d 830, 832–833 [Utah App.1987].

**13.** This decision is not intended to resolve the practical problems inherent in the division of a pension. In *Carpenter v. Carpenter, supra* note 1 at 651, the court holds that the exigencies of a particular case can best be determined by the trial court.

the decree, we direct that on remand the trial court reassess the provisions of the decree that affect both alimony and the distribution of spousal assets.

CERTIORARI IS GRANTED; THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S DECREE IS REVERSED INSOFAR AS IT AFFECTS ALIMONY AND SPOUSAL PROPERTY DIVISION AND THE CAUSE IS REMANDED WITH DIRECTIONS.

All Justices concur.