2007 OK CIV APP 108

**Everett Doyle BRAZIL, Jr.,
Petitioner/Appellant,**

v.

**Debra I. BRAZIL, Respondent/Appellee.**

**No. 104,116.**

Court of Civil Appeals of Oklahoma,
Division No. 4.

Oct. 12, 2007.

William Hollis, Jr., Oklahoma City, OK, for Petitioner/Appellant.

Matthew R. Oppel, Law Offices of Matthew R. Oppel, P.L.L.C., Kingfisher, OK, for Respondent/Appellee.

DOUG GABBARD II, Presiding Judge.

¶ 1 Petitioner, Everett Doyle Brazil, Jr. (Husband), appeals the trial court's division of his retirement account in his divorce action against Respondent, Debra I. Brazil (Wife). After reviewing the record and the law, we reverse and remand with directions.

## BACKGROUND

¶ 2 This case involved a divorce between two parties who were married for 30 years, had no minor children, and had limited assets. At the time of trial, Husband was 54 years old, an employee of the City of Oklahoma City, and eligible to retire. His net monthly income, after taxes, was between $2,400 and $3,250.[1] Wife was 50 years old, was employed part-time by Dillard's, and had enrolled in a few college hours. Her net monthly income, after taxes, was $1,040. At the time of trial, the parties had already agreeably divided their personal property and vehicles. The only remaining unresolved issues were the division of their two major assets: a marital home, which the parties agreed had a fair market value of $80,000, and Husband's retirement account.

¶ 3 Trial was held on October 16, 2006. Three witnesses were called to testify. Wife's expert witness, Kenneth Klingenberg, testified that he was a lawyer and certified public accountant who specialized in valuing retirement accounts. He stated that he had examined Husband's defined benefit retirement account and determined that Husband was now vested and eligible for immediate retirement. Klingenberg stated that, although Husband had only paid $65,000 into the account, if he retired immediately he would be eligible to receive a monthly payment of $2,976 over his expected life span of 24 years, making the present value of his retirement worth approximately $453,665 after an inflationary discount of six percent. Klingenberg further stated, however, that if Husband waited until age 65 to retire, the total amount he received would be significantly less. In the latter event, Husband would receive a monthly payment of at least $4,273, but because his expected life span would be 11 years, the account would pay only $266,638 after being discounted. During Klingenberg's testimony, Wife introduced Exhibit No. 5, suggesting that Wife be given a 45.59% share of the total retirement after an offset to Husband for his share of the equity in the marital home.

¶ 4 Husband also testified. He admitted that during the marriage he did not want Wife to finish college or work more than part-time, in order that she could be available to raise their three children. He stated that, although he had often discussed retiring at age 55, he had now changed his mind and had "no idea" when he would retire. Regarding his living arrangements, Husband testified that he desired to return to Hobart to help care for his parents. He admitted he had not paid the entire amount of temporary support ordered by the court's Temporary Order, but stated Wife had agreed to a reduced amount of temporary support because he was helping two of their children with college expenses.[2]

---

1. Husband testified that his monthly take-home pay was approximately $2,400. However, he admitted that this included deductions for credit union savings insurance on his adult children, and a charitable deduction.

2. One of their children graduated from college between the date of the Temporary Order and trial.

¶ 5 Wife testified that she wanted to continue living in the marital home. Although she was working part-time at Dillard's, she stated she wanted to obtain an education and a better job in order to have a standard of living similar to what she and Husband had during the marriage. She testified that she needed alimony in the amount of $1,352.90 for a period of three years in order to complete her education and obtain full-time employment.

¶ 6 After considering the matter, the trial court awarded the parties a divorce, granted Wife the alimony she requested, and entered the following order:

> 7. The court determines that it is equitable for the Respondent [Wife] to receive a Qualified Domestic Relations Order concerning the retirement account of Petitioner with the Respondent to receive 45.59% of the value of the account. *See* Respondent's Exhibit No. 5. Counsel for Respondent shall prepare a Qualified Domestic Relations Order consistent with this order and present the QDRO to this court for entry within thirty (30) days of this order.

¶ 7 Husband appeals. He argues, first, that the trial court erred in using the present value method of valuation as to the retirement account, because there were insufficient assets to set aside to Wife. Second, he argues that use of the present value method was speculative, caused undue hardship on Husband, and did not provide for an equitable distribution of martial assets.

## STANDARD OF REVIEW

■ ¶ 8 An action for divorce, alimony, custody, and division of property is one of equitable cognizance. The trial court's judgment will not be disturbed on appeal unless found to be clearly contrary to the weight of the evidence, or to constitute an abuse of discretion. *Carpenter v. Carpenter*, 1983 OK 2, ¶ 24, 657 P.2d 646, 651.

## ANALYSIS

■ ¶ 9 Generally, in dividing marital property in a divorce action, the trial court has three duties: *first*, to determine what property, or portion thereof, is marital property subject to division; *second*, to determine the value thereof; and *third*, to divide the same between the parties in a fair, just, and equitable manner.

¶ 10 Here, both parties agree that Husband's retirement is marital property subject to division. However, Husband disagrees with the trial court's method of valuing those benefits and with the court's division and distribution of the benefits. Husband asserts the trial court's order is not consistent with *Pulliam v. Pulliam*, 1990 OK 71, 796 P.2d 623.

¶ 11 In *Pulliam*, the trial court valued a husband's pension plan by using the amount of his accumulated contributions into the plan. On appeal, the Oklahoma Supreme Court noted that retirement benefits are usually divided by using either of two basic methods:

> Under the present value method (also called the immediate offset method), the pension is awarded to the employee, and the non-employee receives other spousal property or money. This method has the advantage of eliminating any future contact between the parties, the court or the employer. One drawback is that the present value method requires the pension to have an ascertainable present value to offset equivalent spousal assets. Another drawback occurs when there is insufficient spousal property. In the latter event, the employee is forced to pay a lump sum equal to the present value of the pension. This may be difficult if the employee lacks the liquid assets necessary for a lump sum payment.
>
> Under the deferred distribution method, the non-employee shares in the retirement benefits when the employee becomes eligible for them. The court typically determines the non-employee spouse's percentage of the future pension benefits which are attributable to the marriage. This determination should be made at the same time other jointly acquired property is divided. An advantage of the deferred distribution approach is that the present value of the pension fund need not be determined. The major disadvantage is that

a final resolution is not reached at the time of the divorce.

. . .

We hold that the present value method is preferable where pension valuation is not unduly speculative, and where, at the time of divorce, sufficient assets are available to divide the present value of retirement benefits without causing an undue hardship to the employee.

*Id.* at ¶¶ 14–15, 17, 796 P.2d at 625–26 (footnotes omitted).

¶ 12 However, the *Pulliam* court gave a caveat regarding these methods:

It should be noted that the court hesitates to dictate any specific technique for distributing pension benefits in a divorce because each pension plan presents a different set of problems.

*Id.* at ¶ 18, 796 P.2d at 626.

¶ 13 The Court specifically held that using accumulated contributions to value retirement "places an unrealistically low value on pension rights" because it represents "only a small fraction of the anticipated value of and income from" the plan. *Id.* at ¶ 9, 796 P.2d at 625 (internal quotation marks omitted). Since there was no evidence the husband would immediately leave his job and withdraw his contributions before retirement, the Court held that the pension plan should be valued using the anticipated value of and income from the plan, together with survival and interest rate assumptions. The Supreme Court concluded:

On remand, the trial court must determine, from the evidence presented by both parties, the pension fund's present value. It is recognized that actuarial experts can apply some rules of probability as appropriate evidence. But the trial court should also consider intangible factors such as work instability, discharge, voluntary preretirement work termination, or the possibility of early death due to illness in determining the valuation of the present worth of the future benefit expectancy. The trial court in its discretion may decide what present value is "just and reasonable."

*Id.* at ¶ 19, 796 P.2d at 626 (footnote omitted).

¶ 14 In the present case, the trial court awarded Wife 45.59% of Husband's retirement benefits, specifically referring to the calculations contained in Exhibit No. 5, and ordered this amount payable pursuant to a QDRO order.[3] Exhibit No. 5 indicates that the Court arrived at this percentage by determining the retirement benefit equaled $453,664.56, an amount based upon Husband's present eligibility for retirement.[4]

¶ 15 In both propositions of error, Husband asserts the trial court erred in valuing his retirement. At trial, he argued the amount of his accumulated contributions, $65,000, was the most accurate value of his retirement benefit. On appeal, he asserts the retirement benefit, presently and in the future, is too speculative to value. We disagree.

■ ¶ 16 *Pulliam* specifically held that accumulated contributions are not an accurate indication of the value of pension benefits. Such an argument is akin to suggesting that appreciated stock be valued at what the parties paid for it. Clearly, the present value of Husband's retirement is substantially greater than what he contributed.

■ ¶ 17 In addition, Husband's retirement benefit is not speculative, but may be easily valued. Contrary to the facts in *Thompson v. Thompson*, 2005 OK CIV APP 2, 105 P.3d 346, cited by Husband, Husband's retirement benefits are not conditional or contingent upon continued employment. Husband not only is vested, but is

---

3. A qualified domestic relations order creates and recognizes the right of an alternative payee to receive all or a portion of a participant's benefits under a qualified employee plan. *See* 26 U.S.C.A. § 414(p) (West Supp.2006) and 29 U.S.C.A. § 1056(d) (West 1999).

4. Both parties assume the trial court used the present value method of distribution. Presumably, they reached this conclusion because the court valued those benefits, and, under the deferred distribution approach, the value of retirement benefits "need not be determined." However, we note that the trial court awarded a percentage of benefits to Wife and ordered the preparation of a QRDO, which is more consistent with the deferred distribution approach.

also entitled to receive retirement benefits immediately. The value of those benefits were determined within a reasonable degree of certainty. As suggested in *Pulliam*, the trial court based its decision upon relevant income and probability factors in determining that Husband's retirement had a present value of $453,665. The method used was consistent with *Pulliam* and based upon assumptions and calculations commonly accepted in the actuarial industry.

¶ 18 Husband implies that the value of his benefits were speculative because he did not know when he would retire. In determining value, this fact is not binding. Under the present value method, the trial court has discretion to decide what value is "just and reasonable." The trial court could properly conclude that a valuation based upon the date of Husband's eligibility for retirement was just and reasonable due to such factors as the length of marriage, the insufficiency of other marital assets, the indefiniteness of Husband's stated retirement plans, and the potentially substantial diminution in the plan's value if Husband postponed retirement.[5] Under the deferred distribution method, the non-employee spouse is usually entitled to share in retirement benefits "when the employee becomes eligible for them." *Pulliam*, 1990 OK 71 at ¶ 15, 796 P.2d at 625. Thus, we find no abuse of discretion in the trial court's determination of the value of the retirement benefits.

¶ 19 Husband also asserts the trial court erred in its division and distribution of the benefits. He argues that the court should not have used the present value method because there were insufficient assets to set aside to Wife, the order caused him undue hardship, and the order resulted in an inequitable distribution of marital assets.

¶ 20 Although the trial court made a determination of present value, it clearly awarded Wife a deferred distribution of the retirement benefits. We find such an award an abuse of discretion. Because Husband intends to work indefinitely, a deferred distribution does not give Wife her share in retirement benefits "when the employee becomes eligible for them" or within the foreseeable future, nor does it give Husband his share of equity in the marital home within the foreseeable future. Under all the facts and circumstances of this case, a deferred distribution was clearly unfair to both parties.[6]

¶ 21 Moreover, the trial court's order of division errs in two other significant respects. First, the court failed to enter a specific order awarding the marital home to either party.[7] Second, the court erred in its calculation of the percentage it intended to award Wife, to Husband's detriment. In determining that Wife was entitled to a 45.59% share of the retirement, the trial court adopted the calculations contained in Wife's Exhibit No. 5, which suggested that Husband be given a $40,000 offset for his share of the home equity against the retirement fund's total value of $453,665, and that Wife then receive 50% of the adjusted amount, or $206,833. However, by offsetting Husband's home equity against the fund's *total value*, instead of *Wife's share of the total value*, Husband received only a quarter of the equity value of the home, instead of half.[8]

---

5. As noted in the text, the expert witness, Klingenberg, testified that if Husband waited until age 65 to retire, he would receive higher monthly benefits, but his reduced life expectancy would mean a reduction in benefits from $453,665 to $266,638 over his life.

6. Use of the deferred distribution method is usually inappropriate where the employee intends to continue working after his or her retirement eligibility date and cannot with certainty provide a date that the non-employee will begin receiving a share of the retirement benefits. This prevents the trial court from determining the value of retirement benefits to any reasonable degree of certainty.

7. In their appellate briefs, both parties indicate the trial court awarded the marital home to Wife. It may well have intended to do so since its calculation of the percentage of retirement benefits to be paid to Wife included an offset for Husband's share of the equity in the home.

8. To accomplish its intended goal, the trial court should have given Wife 50% of the retirement account ($226,833) and *then* offset Husband's equity in the home ($40,000), resulting in an award of $186,833, same being 41.18% of the pension's value.

¶ 22 *Pulliam* holds that the present value method is preferable "where pension valuation is not unduly speculative, and where, at the time of divorce, sufficient assets are available to divide the present value" of the benefits. *Id.* at ¶ 17, 796 P.2d at 626. Here, it is true that there were insufficient marital assets to set aside to Wife. However, we find no impediment to the use of the present value method of distribution. *Pulliam* did not provide an exclusive or exhaustive method of distributing retirement benefits. The Court stated that it "hesitate[d] to dictate any specific technique for distributing pension benefits in a divorce because each pension plan presents a different set of problems." *Id.* at ¶ 18, 796 P.2d at 626. The Court previously has approved the distribution of retirement benefits by the award of a judgment for a sum certain, payable by the employee-spouse on a periodic basis. *See Roberts v. Roberts,* 1960 OK 261, 357 P.2d 980. Under the facts of this case, the trial court erred in failing to use this method of distribution.

### CONCLUSION

¶ 23 For the reasons set forth above, we reverse and remand this matter. On remand, the trial court shall: (1) specifically award the home to one of the parties; (2) determine the dollar amount to which Wife is entitled for her equitable share of Husband's retirement benefits; (3) if the home is awarded to Wife, grant Husband an offset of $40,000 (half the home equity) against Wife's share of retirement; (4) grant Wife a sum certain judgment on the resulting balance due, together with statutory interest; and (5) if necessary, order the periodic payment of said judgment in a reasonable amount, together with such other orders as the trial court may determine are necessary to enforce these findings and orders.

¶ 24 REVERSED AND REMANDED WITH DIRECTIONS.

GOODMAN, J., and REIF, J., concur.