FITZPATRICK v. FITZPATRICK
2023 OK 81
Case Number: 118853
Decided: 06/20/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 81, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE THE MARRIAGE OF:
NICOLE FITZPATRICK, Petitioner/Appellee,
v.
JEREMY FITZPATRICK, Respondent/Appellant.
¶0 Appellant Jeremy Fitzpatrick appealed a decision of the trial court granting a dissolution of marriage. The Court of Civil Appeals, Division IV, reversed the trial court. Appellee Nicole Fitzpatrick petitioned for writ of certiorari from this decision. We granted the petition for writ of certiorari, vacate the Court of Civil Appeals opinion, affirm the trial court's decision, and remand to the trial court for further proceedings.
CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT AFFIRMED;
CASE REMANDED TO TRIAL COURT 
Laura McConnell-Corbyn, Hartzog Conger Cason, Oklahoma City, Oklahoma, for Petitioner/Appellee
Matthew L. Standard, Kirk & Chaney, Oklahoma City, Oklahoma, for Respondent/Appellant
KUEHN, J.:
¶1 Nicole Fitzpatrick obtained a dissolution of her marriage to Jeremy Fitzpatrick in the District Court of Oklahoma County. The couple had minor children and significant marital assets, including real property, bank accounts, investments, and personal possessions. Among these were investments in oil and gas assets. We affirm the trial court's authority to distribute these assets although they could not be valued at the time of the decree; to divide the assets equitably; and to ensure protection of the assets' future value through imposition of a constructive trust.
Facts and Procedural History
¶2 Husband and Wife were married in 2004 and had two children. Wife filed a petition for dissolution of marriage on January 9, 2019, and Husband filed a counterclaim for dissolution of marriage. The trial court entered an agreed temporary order and custody plan on February 28, 2019. Property division, custody, and child support were contested in a seven-day trial held during September and October 2019. The trial court's order granting dissolution of marriage, including findings of facts and conclusions of law, was filed on March 24, 2020. Petitioner's motion to settle journal entry was granted on June 8, 2020, and the final decree of dissolution of marriage was filed on June 12, 2020.
¶3 Husband appealed, and the case was assigned to the Court of Civil Appeals, Division IV. COCA reversed the trial court in part. This appeal concerns only COCA's decision regarding the division of particular marital property, oil and gas assets. This Court granted certiorari on May 31, 2022. We vacate the COCA opinion,
¶4 During the course of the marriage, Husband pursued a mutual goal of investments in oil and gas assets through two different ventures. In 2017, Husband joined the management team of Flywheel Bakken, and in 2018 he also joined Flywheel Energy. Both had a similar structure, with two types of membership interests. The Series A Units were equity units received in exchange for a capital investment. Husband bought the Bakken A Units with marital funds and a loan. He bought the Energy A Units with $126,000 of marital funds plus a substantial loan from the company; this loan was consolidated with the earlier Bakken loan and secured with the Bakken and Energy A and B units. In pledging the distributions from the Bakken Units to service the debt for the Energy A units Husband inextricably tied the Bakken and Energy deals and encumbered marital assets. Put another way, at the time of the divorce there was risk associated with the Bakken units stemming from the loan agreement, and the potential for profit associated with the Energy units.
¶5 Series B Units were profit units, granted to currently employed persons and to further reward them, in consideration of services rendered and to be rendered. Husband was awarded the Bakken B Units at no cost and they vested in 2019. Husband's Energy B Units vested on a five-year schedule, contingent on Wife's signature on a "spousal consent form," which Wife signed.
¶6 The trial court found that all the A and B units of both the Bakken and Energy properties were acquired during the marriage through joint efforts of both parties, and were marital property subject to division. Because part of the properties' value lay in their future growth, the trial court considered the most equitable form of property division. The court ordered that future distributions and proceeds flowing from both sets of A and B units were to be held in constructive trust for both parties' benefit, and for Husband to distribute her equal marital share to Wife.
¶7 Husband admitted that the Bakken A and B units were fully vested and the payout should be shared between the parties. On appeal, he did not contest either the trial court's finding that the Bakken units were marital property, or its ruling that the proceeds be held in and distributed from a constructive trust. However, Husband claimed that the trial court erred in finding that the Energy A and B units were marital property to be equally shared, in assigning value to the units, and in ordering any future proceeds from the units to be distributed from a constructive trust.
¶8 COCA reversed the trial court's decisions regarding the Energy A and B units, finding that the trial court should have determined the units' value and set a valuation date. COCA also found that the trial court's use of a constructive trust for the Energy units was not proper. However, COCA did not disturb the trial court's use of a constructive trust with regard to the Bakken units.
Standard of Review
¶9 Proceedings for divorce or dissolution of marriage, including property division, are actions in equity. We will not disturb a trial court's judgment absent an abuse of discretion or unless the finding is clearly against the weight of the evidence. Hough v. Hough, 2004 OK 45, ¶ 9, 92 P.3d 695, 700. The division of jointly acquired property and marital assets must be just and reasonable. Baggs v. Baggs, 2016 OK 117, ¶ 13, 385 P.3d 68, 73; 43 O.S. § 121(B). The trial court has wide discretion in the division of marital property, and we will not grant relief on appeal unless the decision is clearly contrary to the weight of the evidence or an abuse of discretion. Duty v. Duty, 2007 OK CIV APP 43, ¶ 2, 162 P.3d 939, 904 (approved for publication).
Deferred Distribution of Unvested Assets Was Appropriate
¶10 The Energy A units were not subject to any vesting schedule, and the trial court found that a material part of all the units' economic benefit was in their future growth. Essentially, each unit is a non-fungible thing the value of which cannot be determined today. As it was not possible to set a money value on the units' future earnings, the trial court equally divided the future net distributions. This ruling was unremarkable. This Court has never held that a trial court must in all instances calculate a specific monetary value before dividing marital assets. In fact, we have held the opposite.
¶11 In Pulliam v. Pulliam we considered the division of marital assets that included a civil service pension. Pulliam v. Pulliam, 1990 OK 71, ¶ 3, 796 P.2d 623, 624. We discussed the two common methods of division. Under the present value method the employee takes the pension, and the non-employee takes money or other spousal property. Id. at ¶ 14, 796 P.2d at 626. This method works where the pension has an ascertainable present value that can be used to offset equivalent spousal assets. Id. However, where the pension does not have an ascertainable present value, a court may use the deferred distribution method. Id. at ¶ 15, 706 P.2d at 626. When the employee becomes eligible for retirement benefits, the non-employee shares in them, based on a percentage of the future pension benefits attributable to the marriage, determined at the time the other jointly acquired property is divided. Id. We concluded,
We hold that the present value method is preferable where pension valuation is not unduly speculative, and where, at the time of divorce, sufficient assets are available to divide the present value of retirement benefits without causing an undue hardship to the employee. The trial court has discretion to decide whether the described impediments exist. If one or more of them is found, then the trial court may distribute the assets according to the deferred distribution approach. Under this approach, the trial court at the time of trial should award each spouse an appropriate percentage of the pension.
Id. at ¶ 17, 796 P.2d at 626.
¶12 That is exactly what the trial court did. Faced with an asset, the value of which could not be determined at the time of property division, the trial court used the deferred distribution method.
¶13 COCA reversed. It found that, because the Energy A units weren't subject to vesting and Wife's entitlement to them wasn't contingent on future occurrences, the trial court should have determined the units' value and set a valuation date. COCA relied on Brazil v. Brazil, 2007 OK CIV APP 108, 171 P.3d 325. In determining division of a retirement account Brazil noted that generally, in dividing marital property, a court must (a) determine what property is subject to division, (b), determine its value, and (c) fairly, justly, and equitably divide it between the parties. Id. at ¶ 9, 171 P.3d at 327. However, this general description is not a requirement. In fact, Brazil quotes the Pulliam description of deferred distribution, including the Court's caveat that division and distribution of pension benefits must be done on a case-by-case basis. Id. at ¶ 12, 171 P.3d at 328. Brazil simply cannot be interpreted to say that a trial court is required under every circumstance to calculate the value of a marital asset before distribution; such an interpretation is directly counter to Pulliam.
¶14 COCA also relied on language in Thielenhaus v. Thielenhaus, 1995 OK 5, ¶ 16, 890 P.2d 925, 933, holding that a trial court has discretion to determine a valuation date that is equitable under the facts and circumstances of the case. The issue in Thielenhaus was whether, when assigning valuation to marital assets, a trial court was bound by the date of separation, the date of trial, or some other date -- not whether a value must be assigned to each asset at the time the decree is entered. More recently, we concluded that a deferred retirement option plan, the value of which was contingent on future choices, could be a marital asset which the trial court must protect. Baggs, 2016 OK 117, ¶ 19, 385 P.3d 68, 76-77. Even though the asset could not be valued or divided at the time of the divorce, the trial court should determine what portion might have accrued during the marriage, and order the decree so as to protect the wife's interest in the contingent future marital asset. Id. Read with Pulliam, Thielenhaus and Baggs underscore this Court's commitment to allow the trial court flexibility in determining the value of marital assets.
The Division of the Energy B Units as a Marital Asset Was Proper
¶15 The trial court has wide discretion in the division of marital property, and we will not grant relief on appeal unless the court's decision is clearly contrary to the weight of the evidence or an abuse of discretion. Duty, 2007 OK CIV APP 43, ¶ 2, 162 P.3d at 940. Division of property acquired during a marriage must be just and reasonable -- that is, equitable. 43 O.S. § 121(B); Baggs, 2016 OK 117, ¶ 15, 385 P.3d at 75. The trial court here correctly found that the Energy B Units were marital property.
¶16 After considering the facts and circumstances of this case the court determined that the value of the Units should be distributed equally to each party. In doing so, the trial court relied on Duty. There, COCA Division III found, first, that unvested or contingent stock options could be marital property subject to division. Duty, 2007 OK CIV APP 43, ¶ 5, 162 P.3d at 940-41. As property acquired during the marriage is presumed to be jointly acquired, the party claiming otherwise has the burden of proof to show it is not. Id. at ¶ 3, 162 P.3d at 940. In Duty, the facts showed an equitable division of the assets gave the husband two-thirds and the wife one-third of the stock options. Id. at ¶ 8, 162 P.3d at 941. COCA approved the trial court's conclusion in Duty based on the facts of that case. Id. That is, in Duty the trial court found (and COCA agreed) that all the stock options were marital assets, and distributed the options equitably based on each party's contribution and responsibilities connected to the options. Id. Nowhere does Duty suggest, much less require, that a trial court must find that a contingent asset is attributable to the marriage only in part, and must determine what part of the asset was acquired before or after the marriage.
¶17 Because Husband and Wife acquired the Energy B Units during the marriage, they were presumed to be jointly acquired. Applying this presumption, the trial court considered the evidence before it, concluded that the entirety of the contingent asset was marital property, and further concluded that under a just and reasonable distribution each party should receive half of any proceeds from the Units after payment of existing debt and taxes. In doing so, the trial court specifically found that the property was jointly acquired during the marriage, and implicitly found that Husband did not meet his burden to defeat the presumption that the property was jointly acquired. The divorce decree contained ample findings that the Energy B units were awarded during the marriage as a reward for current employment, as a reward for further employment, and in consideration of Husband's services in the past and the future, all made possible by Wife's substantial assistance.
¶18 However, COCA found the trial court erred. COCA would have required the trial court to find some part of the Energy B Units attributable to post-marital efforts, which is a misapplication of the holding and reasoning in Duty. COCA suggested in footnote 3 of its opinion that it reached this conclusion at least in part because Wife had not presented evidence to dispute Husband's claim that the property was not jointly acquired. But this improperly shifts the burden of proof. It was Husband's duty to present evidence to rebut the presumption of joint acquisition, not Wife's duty to show the property was jointly acquired. The trial court correctly applied the law. Its conclusions were not an abuse of discretion and not clearly contrary to the weight of the evidence. Carpenter v. Carpenter, 1983 OK 2, ¶ 24, 657 P.2d 646, 651.
The Use of a Constructive Trust was Not Improper
¶19 The trial court explicitly found that, prior to and during the divorce proceedings, Husband deliberately deceived and defrauded Wife and breached his fiduciary duties towards her. Given this finding, the trial court determined that the most equitable way to ensure that Wife got the future distribution of proceeds to which she was entitled, from all the Bakken and Energy A and B Units, was to hold all the Units in a constructive trust. A constructive trust may be imposed to avoid unjust enrichment. Matter of Est. of Ingram, 1994 OK 51, ¶ 19, 874 P.2d 1282, 1287; Cacy v. Cacy 1980 OK 138, ¶ 7, 619 P.2d 200, 202. As the trial court noted, these are contingent assets, and their future growth is a material part of their economic benefit. By requiring Husband to hold the Units in a constructive trust, any proceeds or income related to the Units are preserved for the mutual benefit of the parties, and Wife's marital share may be distributed to her without risk of unjustly enriching either party.
¶20 Inexplicably and without citation to authority, COCA determined that the trial court had no authority to impose a constructive trust as to the Energy A and B Units only. COCA appeared to rely on the fact that there is no language explicitly authorizing a constructive trust in 43 O.S. § 121. However, the statute gives trial courts broad authority to divide jointly acquired property in a just and reasonable manner. 43 O.S. § 121(B). The statute explicitly notes that real or personal property may be divided in kind, or granted to one party with the other paying a sum to effect a fair and just division. 43 O.S. § 121(B). But the statute is silent on how a division in kind may be effected. In the cases discussed above, which involved pensions, stock options, or retirement benefits -- marital assets which cannot be valued or distributed at the time of the divorce -- we approved decrees which required the owning party to maintain the asset for both parties' benefit. Baggs, 2016 OK 117, ¶ 1, 385 P.3d at 369; Pulliam, 1990 OK 71, ¶ 17, 796 P.2d at 626; Brazil, 2007 OK CIV APP 108, ¶ 2, 171 P.3d at 326; Duty, 2007 OK CIV APP 43, ¶ 1, 162 P.3d at 939. And in Pulliam we explicitly declined to "dictate any specific technique for distributing pension benefits in a divorce because each pension plan presents a different set of problems." Pulliam, 1990 OK 71, ¶ 18, 796 P.2d at 626; see also Carpenter, 1983 OK 2, ¶ 24, 657 P.2d at 651 (exigencies of each case are best determined by trial court). The same problems occur in the distribution of other contingent assets which cannot be valued at the time of the decree, including the Energy A and B Units.
¶21 Due to Husband's failure to properly discharge his past fiduciary duties, the trial court here chose to effect this distribution by imposition of a constructive trust. COCA's finding that the trial court could not do this is inconsistently applied. The trial court imposed a constructive trust on all the A and B Units. But Husband did not contest the trial court's ruling on the Bakken Units and COCA did not disturb that decision. COCA let that constructive trust stand. If the trial court had the authority to require that arrangement for the Bakken Units -- and it did -- then it logically follows that it must have the authority to do so for the Energy Units.
Conclusion
¶22 The trial court did not abuse its discretion in determining the Energy A and B Units were marital assets, arranging for their deferred distribution, and effectuating that distribution through a constructive trust. We vacate the Court of Civil Appeals decision and affirm the trial court.
CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
TRIAL COURT AFFIRMED;
CASE REMANDED TO TRIAL COURT
ALL JUSTICES CONCUR. 
FOOTNOTES
[1]