Dear Administrator Davis
¶ 0 This office has received your letter asking for an official Opinion addressing, in effect, the following questions:
1. In the event that a qualified State employee isinadvertently omitted from participation in the Oklahoma PublicEmployees Retirement System from 1970 through 1974, is the Stateemployer liable to the Oklahoma Public Employees RetirementSystem for an amount calculated under the current provisions of74 O.S.Supp. 1995, § 917(7) or for an amount calculated underthe statutory provisions which were in effect at the time of theomission?
 2. If it is determined that the employer is liable to theOklahoma Public Employees Retirement System for an amountcalculated under the current provisions of 74 O.S.Supp. 1995, §917(7), is that amount payable when the employee retires?Further, if the employee continues to work beyond his firsteligible retirement date, is the amount owing by the employerreduced accordingly?
¶ 1 Your first question essentially asks this office to determine the appropriate method by which to compute the cost the Oklahoma Public Employees Retirement System ("OPERS") must invoice a participating State employer which failed to properly enroll and make retirement contributions on behalf of an eligible employee from 1970 through 1974. Or stated differently, did the Legislature intend for State employers to pay OPERS the statutorily mandated "actuarial cost" for participation coverage errors committed prior to the effective date of the current 74O.S.Supp. 1995, § 917[74-917](7), but discovered subsequent to that same date?
¶ 2 In your second question, you essentially inquire whether the actuarial amount calculated under the OPERS statutes is payable by the employer to OPERS at the time the employee retires. You further ask whether the amount paid by the employer pursuant to 74 O.S.Supp. 1995, § 917[74-917](7) is reduced if the employee continues to work beyond his first eligible retirement date.
¶ 3 In order to respond to your inquiries, it will be necessary to examine and construe several relevant provisions of the Oklahoma Public Employees Retirement System Act (the "OPERS Act"), 74 O.S. 1991 and Supp. 1995, §§ 901-943. In construing a statute, the fundamental rule is to determine and give effect to the legislative intent. Jackson v. Independent School DistrictNo. 16 of Payne County, 648 P.2d 26, 29 (Okla. 1982). Generally, the "determination of legislative intent controls the statutory interpretation," and such "intent is ascertained from the whole act in light of its general purpose and objective." Smicklas v.Spitz, 846 P.2d 362, 366 (Okla. 1992).
 I. Current Method of Assessing and Calculating Payment For Participating Employer Errors Under OPERS Act
¶ 4 Title 74 O.S.Supp. 1995, § 917[74-917](7) provides:
 When any error in calculation or participation coverage to a prior or current employee exists, it shall be the responsibility of the participating employer which made the error to pay the amount determined by the Board pursuant to Section 913.5 of this title.
(Emphasis added.)
¶ 5 As indicated by its text, Section 917(7) requires that the State employer pay OPERS "the amount determined by the Board pursuant to Section 913.5 of [Title 74]" for existing errors regarding employee participation coverage with OPERS.
¶ 6 In turn, Section 913.5 of Title 74 provides in pertinent part:
 The Board of Trustees shall adopt rules for computation of the purchase price for service credit. These rules shall base the purchase price for each year purchased on the actuarial cost of the incremental projected benefits to be purchased. The purchase price shall represent the present value of the incremental projected benefits discounted according to the member's age at the time of purchase.
74 O.S.Supp. 1995, § 913.5[74-913.5](A) (emphasis added).
¶ 7 Section 913.5(A) provides the current statutory mechanism for computing the purchase price of participating service years in OPERS. This mechanism was amended from a "contribution cost plus interest" valuation basis to an "actuarial cost" valuation basis when Section 913.5 was amended by the Legislature in 1993.[1] The actuarial cost valuation method calculates the price of any service credits to be purchased from OPERS based upon the present value of the "incremental projected benefits discounted according to the member's age at the time of purchase." Section 913.5(A) defines "incremental projected benefits" as:
 [T]he difference between the projected benefit said member would receive without purchasing the service credit and the projected benefit after purchase of the service credit computed as of the earliest age at which the member would be able to retire. Said computation shall assume an unreduced benefit and be computed using interest and mortality assumptions consistent with the actuarial assumptions adopted by the Board of Trustees for purposes of preparing the annual actuarial evaluation.
74 O.S.Supp. 1995, § 913.5[74-913.5](A) (emphasis added).
 Prior Method of Assessing and Calculating Payment For Participating Employer Errors Under OPERS Act
¶ 8 In Attorney General Opinion 76-303, this office addressed an inquiry similar to your present question. In that opinion, the Attorney General stated:
 [T]he Board of Trustees may accept all contributions which would have been required of the employer and the employee during the period of employment by the employee. The amounts of money which would be required would of course be determined by the payroll deduction required in 74 O.S. Supp. § 919 as it may have been from time to time amended and the employer's contribution would similarly be determined by 74 O.S. Supp. § 920 as it has been amended from time to time. Thus, where a former employee who may for example have worked 10 or more years so as to avail himself of the right of a vested benefit wishes to avail himself of that benefit, he must first secure and present for payment to the Board of Trustees all contributions which he would have made under the law during his employment and the Board of Trustees must also receive from his employer all contributions which similarly would have been made to the System during his employment. The sums required of both employer and employee would also be increased above the exact contribution by a rate of interest not to exceed that earned by other investments of the Fund pursuant to 74 O.S. 1971, § 921[74-921] in order that the Fund be actuarially sound.
A.G. Opin. 76-303 (emphasis added).
¶ 9 As indicated, Attorney General Opinion 76-303 was issued approximately seventeen years before the Legislature enacted the current Section 917(7). During the decade of the Seventies, the OPERS Act contained no express provisions addressing a situation in which a State employer committed a "participation error" concerning one of its employees. However, in 1985, the Legislature enacted the original version of Section 917(7), which provided:
 When any error in calculation or participation coverage to a prior or current employee exists, it shall be the responsibility of the participating employer which made the error to pay the contribution and any interest charges levied against the employee.
1985 Okla. Sess. Laws, ch. 300, § 7 (emphasis added).
¶ 10 In the 1985 version of Section 917(7), the Legislature, contrary to the conclusion in Attorney General Opinion 76-303, expressly mandated that the State employer exclusively bear the costs associated with its error in failing to enroll one of its employees in OPERS. The Legislature required the employer to pay the total amount of all contribution costs and interest levied by OPERS against the employee for the purchase of the omitted service years.
¶ 11 When the Legislature amended Section 917(7) in 1993, it deleted the relevant "contribution and any interest charges or other costs levied against the employee" in favor of the present "amount determined by the Board pursuant to Section 913.5" (actuarial cost) language.[2] The remainder of Section 917(7) remained unchanged, mandating that any errors by a participating employer regarding a prior or current employee's participation coverage in OPERS remained the sole responsibility of the employer to pay the amount determined by the OPERS Board of Trustees to correct the error.
 Comparison of Actuarial Cost Method and Contribution Plus Interest Method
¶ 12 As a whole, the actuarial cost valuation method of calculating and assessing service year credit for OPERS members is substantially more expensive to purchase than the former contribution plus interest method. By its inclusion of the actuarial cost valuation basis in Section 913.5, it is apparent that the Legislature determined in 1993 that the former contribution plus interest valuation method had become insufficient to properly fund the future benefit amounts of OPERS members who make application to purchase past service credits.
¶ 13 As this office stated in Attorney General Opinion 95-45, the retirement plan contained within the OPERS statutes is commonly known as a "defined benefit plan."[3] "A defined benefit plan pools the plan's assets in an aggregate trust fund and promises a fixed amount to plan participants at retirement, without regard to the plan's investment performance."[4]
Regina T. Jefferson, Defined Benefit Plan Funding: How Much IsToo Much? 44 Case W. Res. L. Rev. 1, 4 (1993). Similarly, where a retirement plan undertakes to provide a predetermined benefit, there is no necessary equivalence between the monetary value of the benefits that have been credited as of any given point and the sums that have been accumulated to pay the benefits. See
Dan M. McGill Donald S. Grubbs, Jr., Fundamentals of Private Pensions 239 (6th ed. 1989).
¶ 14 Thus, in a defined benefit plan such as OPERS, the actuarial cost method of calculating service credit purchase cost bears no relationship to the statutory contribution level which was in place during the time of State service that the OPERS member desires to purchase. Instead, Section 913.5 reflects the Legislature's intent that the actuarial cost directly relate to the present actual amount of funding that OPERS must receive in order to adequately provide the future unreduced statutory retirement benefits for the requested additional service years.
¶ 15 As indicated herein, the dispositive issue implicit within your first question is whether the present version of Section 917(7) requires a State employer to currently pay OPERS the more expensive actuarial cost as found within Section 913.5 for any erroneously omitted service years or instead, must OPERS consult statutes in effect from 1970 through 1974, and charge the employer the less costly contribution amount in effect during that time plus interest?
 Analysis and Application of Section 917(7) Actuarial Method
¶ 16 Section 917(7) need not be examined in the context of prospectivity or retrospectivity in that the plain language of the statute makes it clear that a participating employer shall be responsible for paying the Section 913.5 (actuarial cost) amount"[w]hen any error in . . . participation coverage . . .exists." When the intent of the Legislature is "plainly expressed in a statute, it must be followed without further inquiry" or statutory construction. Matter of Request of HammProduction Company, 671 P.2d 50, 52 (Okla. 1983). Thus, for purposes of OPERS assessing State employers for any existing calculation or participation errors under Section 917(7), the statute requires that any errors not properly rectified by the employer prior to the effective date of the current Section 917(7) shall be corrected by the State employer's present submission to OPERS of the actuarial payment amount required by Section 913.5. The prior date or circumstances by which the error was committed by the State employer are irrelevant for purposes of determining the actuarial cost.
¶ 17 As discussed previously, by its inclusion of the actuarial cost amount in Section 917(7), the Legislature determined in 1993 that the former contribution plus interest calculation method had become insufficient to properly fund the future benefit amounts for OPERS members wishing to purchase service. The Legislature, as a matter of economic policy, also determined that through Section 917(7), if a State employer made errors in the calculation of participation coverage of current or prior employees, the employer would bear the expense of making OPERS actuarially whole for the employer's failure to comply with the mandatory statutory duty to enroll its employees with OPERS and make contributions on their behalf.
¶ 18 In this case, for whatever reason, the participating State employer erroneously failed to budget, withhold and remit the employee's retirement contribution share as well as its own contribution share for approximately four years during which the employee's membership in OPERS was mandated by statute. As a result, the State employer erroneously denied its employee legally required coverage in OPERS for that same time period. Based upon the factors set forth herein, under Section 917(7), OPERS must require the State employer to pay the present value of the affected employee's neglected four years of service based upon the current actuarial cost as prescribed in 74 O.S.Supp.1995, § 913.5[74-913.5]. To construe Section 917(7) otherwise would economically penalize OPERS for a mistake which was not of its making.
 II.
¶ 19 In the first part of your second question, you ask whether the amount calculated under Section 917(7) is payable by the employer to OPERS at the time the employee retires. You next inquire whether the amount paid by the employer pursuant to Section 917(7) is reduced if the employee continues to work beyond his first eligible retirement date.
¶ 20 Implied within your questions is the issue of whether Section 917(7) or any other provision within the OPERS Act indicates a particular time by which a participating employer must remit to OPERS the actuarial cost for a State employee's omitted service credit as mandated under Section 917(7).
¶ 21 As indicated herein, 74 O.S.Supp. 1995, § 917[74-917](7) expressly requires that "[w]hen any error in . . . participation coverage to a prior or current employee exists,
it shall be the responsibility of the participating employer which made the error to pay the [Section 913.5] amount" (emphasis added). Oklahoma law requires that "[w]ords used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears." 25 O.S. 1991, § 1[25-1]. When the intent of the Legislature "is plainly expressed in a statute, it must be followed without further inquiry" or statutory construction. Hamm at 52.
¶ 22 The conjunction "when" as used in Section 917(7) generally is defined as meaning "at or during the time that." Webster's Third New International Dictionary 2602 (1981). The term "exist" is defined as "to have actual or real [material] being." Id. at 796. Ordinarily, the use of the word "shall" in a legislative enactment carries with it the presumption that the direction is mandatory. Oklahoma Alcoholic Beverage Control Board v. Moss,509 P.2d 666, 668 (Okla. 1973).
¶ 23 Thus, by its express terms, the plain language in Section 917(7) mandates that a participating employer must remit to OPERS the necessary cost calculated under Section 913.5 at that time "when" an error in calculation or participation coverage of a prior or current employee is realized. Generally, a determination of the time that such an error is realized will be a question of fact. However, based upon the circumstances outlined in your first question, the State employer at issue would be liable for the appropriate payment to OPERS as soon as the State employee's omitted service years were discovered and the Section 913.5 amount is determined by the OPERS Board of Trustees.
¶ 24 Further, for purposes of ensuring a participating employer's compliance with its statutory duty under Section 917(7), it is irrelevant whether the affected State employee works beyond his or her earliest retirement date. Again, 74O.S.Supp. 1995, § 913.5[74-913.5](A) mandates clearly that "[t]he purchaseprice shall represent the present value of the incrementalprojected benefits discounted according to the member's age at the time of purchase." (Emphasis added.) As previously provided, Section 913.5(A) defines "incremental projected benefits" as "the difference between the projected benefit said member would receive without purchasing the service credit and the projected benefit after purchase of the service credit computed as of theearliest age at which the member would be able to retire." (Emphasis added.) Finally, Section 913.5(A) provides that the "computation shall assume an unreduced benefit and be computed using interest and mortality assumptions consistent with the actuarial assumptions adopted by the Board of Trustees for purposes of preparing the annual actuarial evaluation."
¶ 25 While the earliest date at which the employee is able to retire is an important statutory component in determining the actuarial cost an employer must pay pursuant to Section 917(7), the actual date on which the employee ultimately retires bears absolutely no consequence on the amount the employer must pay OPERS for its past participation or coverage errors.
¶ 26 To the extent that the response to the second question in Attorney General Opinion 76-303 is inconsistent with the foregoing, it is hereby withdrawn due to the intervening statutory modifications to the OPERS Act.
¶ 27 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Title 74 O.S.Supp. 1995, § 917(7) requires that a Stateemployer which inadvertently omitted a State employee fromparticipation in the Oklahoma Public Employees Retirement Systemfrom 1970 through 1974 is liable to the System for the actuarialcost of the omitted service.
 2. Title 74 O.S.Supp. 1995, § 917(7) requires a Stateemployer to remit to the Oklahoma Public Employees RetirementSystem the actuarial cost calculated under 74 O.S.Supp. 1995, §913.5[74-913.5] at that time "when" it is determined that an error incalculation or participation for a prior or current employeeexists and the Board of Trustees has determined the amountrequired under Section 913.5. Further, the amount owed by a Stateemployer under Section 917(7) is not affected if a State employeecontinues to work beyond his or her first eligible retirementdate.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
BARRY K. KOONCE ASSISTANT ATTORNEY GENERAL
[1] 1993 Okla. Sess. Laws, ch. 322, § 26.
[2] Section 917(7) was also amended by the Legislature in 1990:
 When any error in calculation or participation coverage to a prior or current employee exists, it shall be the responsibility of the participating employer which made the error to pay the contribution and any interest charges or other costs levied against the employee.
1990 Okla. Sess. Laws, ch. 340, § 41.
[3] A "defined benefit plan" is "one that promises to pay a specified amount to each employee who retires after a set number of years of service." Pulliam v. Pulliam, 796 P.2d 623, 624
(Okla. 1990).
[4] In the OPERS Act, the benefit amount is determined by a statutory formula which consists of a percent factor of a member's final average compensation multiplied by the member's years of credited service. See, 74 O.S.Supp. 1995, § 915[74-915].