2005 OK CIV APP 2

**April Christine THOMPSON, Petitioner/Appellant/ Counter–Appellee,**

v.

**Mark Alan THOMPSON, Respondent/Appellee/Counter–Appellant.**

**No. 98,856.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 17, 2004.

---

Russell V. Barber, Barber and Barber, and Alan D. Rosenbaum, Poteau, OK, for Petitioner/Appellant/Counter–Appellee.

Douglas W. Sanders, Jr., Sanders, Sanders & Sullivan, Poteau, OK, for Respondent/Appellee/Counter–Appellant.

Opinion by BAY MITCHELL, Presiding Judge.

¶ 1 April Christine Thompson (Wife) and Mark Alan Thompson (Husband) appeal from several orders in their divorce decree regarding the division of marital property and debt, the award of attorney fees and support alimony. Wife argues that the trial court committed the following errors: 1) failing to award her an equitable percentage of Husband's military retirement; 2) failing to award sufficient support alimony; 3) failing to equitably divide her criminal restitution debt; 4) failing to award sufficient attorney fees; and 5) favoring Husband because of his military status. Husband counter-appeals, arguing the court erred by: 1) setting the value of the Oklahoma home too low; 2) awarding a total of $1,767 in support alimony to Wife; and 3) awarding $850 in attorney fees to Wife.

¶ 2 The trial court's interpretation of Wife's eligibility to divide Husband's military retirement is a question of law that we review *de novo*, giving no deference to the trial court. *Wilson v. Wilson*, 1999 OK 65, ¶ 3, 987 P.2d 1210, 1212–13. However, the remaining issues in this divorce proceeding are equitable in nature, and we will not reverse the judgment unless the trial court abused its discretion or the findings are clearly against the weight of the evidence.

*Hough v. Hough*, 2004 OK 45, ¶ 9, 92 P.3d 695, 700.

¶ 3 Husband and Wife married in 1992, and had been married for ten years at the time of their divorce. They owned a home in Oklahoma where they lived for most of the marriage. Husband worked as a correctional officer from 1993 to 1998. He also served in the Marine Corps Reserves for approximately five years, beginning in 1996. Husband quit his Department of Corrections job in August 1998 to attend college. He continued to serve in the Marine Reserves, and the military paid his college expenses. After graduating, Husband joined the active duty Marines, and the family moved to Virginia. Wife worked at various jobs during the marriage, and usually was only able to make minimum wage or slightly more. However, Wife gave up a job where she was making $1,500 per month to move with Husband.

¶ 4 The couple separated approximately one year after they moved to Virginia. Wife returned to their Oklahoma home with their two minor children. Husband purchased a home for himself in North Carolina and financed new furnishings for the home. Pursuant to a temporary court order, Husband paid the $589 mortgage on the Oklahoma home and $708 per month in child support until the trial. In addition, Husband was ordered to return the home furnishings the couple had accumulated during the marriage to Wife in Oklahoma.

¶ 5 At trial on the property division and support alimony issues, a significant issue concerned Wife's conviction in 1999 for embezzling more than $134,000 from her employer between 1995 and 1998. As a result of this criminal conviction, Wife spent four months in prison and made a down payment on the restitution debt in the amount of $30,000. Wife was required to pay the remainder of the restitution in the amount of $400 per month until paid in full. Wife asked the trial court to require Husband to pay the restitution debt as support alimony for two years.

¶ 6 In the divorce decree, the trial court granted the Oklahoma home and its debt to Wife, and the North Carolina home and its

debt to Husband. In addition, the court ruled that the equity in both homes would be equitably divided. The court determined the equity in the Oklahoma home was $25,436.89, and the equity in the North Carolina home was $6,100. The court awarded all of the furniture and possessions currently in the two homes to the respective parties, and awarded both parties their own vehicle. Husband was responsible for the debt on his furniture and vehicle, but the furniture and vehicle awarded to Wife were debt-free. The court also equitably divided the credit card debt.

¶ 7 The court also ordered Husband to pay $793.60 per month in child support pursuant to the child support guidelines. In addition, Husband was to maintain health coverage for the children, pay 80% of any unreimbursed medical expenses and pay 80% of any child care expenses. However, the court refused Wife's request for support alimony to pay her criminal restitution, instead ordering Husband to pay $589.00 for three months to pay the Oklahoma mortgage while Wife tried to refinance the home. The court also refused Wife's request for $2,500 in attorney fees, only ordering Husband to pay $850. Finally, the court refused Wife's request for a percentage of Husband's military retirement, stating Wife was not entitled to retirement benefits under the United States Code.

¶ 8 First, we find the court erred as a matter of law by holding Wife not entitled to an equitable division of Husband's military retirement. The court interpreted 10 U.S.C. § 1408 as preventing state courts from dividing any military retirement as a marital asset unless the parties had been married for at least ten years *and* the military spouse had served on active duty for ten years during the marriage. We disagree. This provision was intended to remove the issue of military retirement from federal preemption and allow each state to determine whether military retirement should be divisible. 10 U.S.C. § 1408(c)(1) (stating a court may consider disposable retirement as separate or joint property according to the laws of that state); *see also Stokes v. Stokes,* 1987 OK 56, ¶ 6, 738 P.2d 1346, 1347 (citing the Senate Report to determine the intent of Congress in pass-

ing § 1408 was to make the division of military retirement a state law issue). Section 1408(d)(1) requires that the military make payments from a member's disposable retirement pay *directly* to the spouse or former spouse if served with a proper court order for child support, alimony, or property division. Subsection 2 then limits the direct pay provision as follows:

If the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired pay, *payments may not be made under this section to the extent that they include an amount resulting from the treatment by the court under subsection (c) of disposable retired pay of the member as property of the member or property of the member and his spouse.*

10 U.S.C.A. § 1408(d)(2) (emphasis added). However, nothing in this provision prevents the state from dividing the military retirement if this rule is not satisfied; it merely prevents direct payment from the military. *See* 10 U.S.C.A. § 1408(e)(6) (stating that even if the maximum limit for direct payment has been met, the member is not relieved of liability for the unsatisfied obligation, which can be enforced by any means except direct payment). Numerous cases across the country have also held that this limitation only applies to direct payments and does not prevent the division of a military retirement if allowed by state law. *See, e.g., Parker v. Parker,* 750 P.2d 1313, 1314–15 (Wyo.1988); *Warner v. Warner,* 651 So.2d 1339 (La.1995). We find that the ten-year rule relied on by the trial court only limits the availability of direct payments from the military, and state law governs the issue of whether military retirement benefits are divisible.

¶ 9 Oklahoma law clearly provides that a military retirement may be jointly acquired property that should be equitably divided between the parties. *Rookard v. Rookard,* 1987 OK 87, ¶ 4, 743 P.2d 1083, 1083 (reversing for trial court to consider military pension in property division and alimony award); *Stokes,* ¶ 11, 738 P.2d at 1348

(stating military retirement may be divisible as joint property); *Pulliam v. Pulliam,* 1990 OK 71, ¶ 8, 796 P.2d 623, 624–25 (noting both private and military pensions should be included as marital property if jointly acquired during marriage). Thus, the trial court should have determined what portion of Husband's military retirement was jointly acquired during the marriage.

■ ¶ 10 Husband argues, however, that his military retirement was not divisible because it would not vest unless he stayed in the military for several more years. In holding that a pension was a divisible marital asset, the Oklahoma Supreme Court emphasized:

> In addressing this issue, we do not deem it significant whether the pension is "vested" in the sense that it is now due and owing, *whether it is conditional or contingent upon continued employment* for a prescribed period or terminable upon the occurrence nor non-occurrence of some future event. In any of these events, it is a valuable right which has been purchased through joint efforts of the spouses to the extent that it has been acquired or enhanced during the marriage, and as such becomes jointly acquired property during the marriage.

*Carpenter v. Carpenter,* 1983 OK 2, ¶ 23, 657 P.2d 646, 651 (emphasis added & internal citations omitted). This language clearly allows the division of a contingent retirement.

■ ¶ 11 The Oklahoma Supreme Court has also discussed how retirement benefits should be divided. *Pulliam,* ¶ 13, 796 P.2d at 624–25. One option is the "present value method," where the entire pension is awarded to the employee, and the non-employee receives other property or money as an immediate offset. *Id.* at ¶ 14, 796 P.2d at 625. A second option is the "deferred distribution method," where the court determines the percentage of the future benefits that are attributable to the marriage, and the non-employee receives an equitable share of that percentage of benefits when the employee becomes eligible. *Id.* at ¶ 15, 796 P.2d at 626. The present value method is preferred when the pension valuation is not unduly speculative and sufficient assets are available

to offset without causing an undue hardship to the employee. *Id.* at ¶ 17, 796 P.2d at 626. However, if either of these impediments exists, the court should distribute the assets according to the deferred distribution approach and award each spouse an appropriate percentage of the pension. *Id.* Here, the deferred distribution method is preferable to equitably divide this potentially valuable benefit, because the present value of Husband's military retirement is speculative. We thus reverse and remand for the trial court to determine the percentage of the military retirement that was jointly acquired during the marriage, and award Wife an equitable share of that retirement.

■ ¶ 12 Second, we find the trial court did not abuse its discretion by ordering Husband to pay support alimony in the amount of $589 for three months, but refusing Wife's request to make Husband pay her restitution debt as support alimony for 24 months. Initially, we reject Husband's argument that any award of alimony was inequitable because it could be used to pay part of Wife's restitution debt. The court specified that it was awarding alimony in the amount of Wife's house payment for three months to allow Wife time to refinance the Oklahoma home. Support alimony is intended to meet excess monetary needs and cushion the impact of the transition from marriage and readjustment to gainful employment. *Johnson v. Johnson,* 1983 OK 117, ¶ 23, 674 P.2d 539, 546. The court found that Mother's gross income was $1,083 per month, while Husband's was $4,333.33 per month. Based on the disparity in the income levels, it was reasonable for the court to allow Wife three months without a house payment to comply with the court's order and readjust after the divorce.

¶ 13 We also reject Wife's argument that Husband should have been ordered to pay Wife more support alimony. In Wife's Trial Exhibit filed the day before trial, she asked for alimony of $100 per month to make payments on a credit card with a balance of $5,000, and "an additional payment of $400.00 per month for 24 months to Petitioner as amounts due for two (2) years toward Petitioner's restitution owed to the LeFlore

County Court Clerk ..." The court gave the credit card debt to Husband, in essence granting that part of Wife's request for alimony. However, the court refused to make Husband pay for Wife's criminal restitution as support alimony, stating it was solely her debt even though it was incurred during the marriage.

■ ¶ 14 We find no abuse of discretion by the trial court's refusal to transfer the burden of Wife's criminal liability to the innocent spouse. The award of support alimony is equitable in nature, and the court has a great deal of discretion. *Wilson v. Wilson*, 1999 OK 65, ¶ 3, 987 P.2d 1210, 1212. The party requesting assistance from an equity court must approach the court with clean hands. *Jones v. Baggett*, 1999 OK 68, ¶ 22, 990 P.2d 235, 244. In addition, the conduct of the parties is a factor the trial court can consider when deciding whether to award support alimony. *Bowring v. Bowring*, 1946 OK 65, ¶ 7, 166 P.2d 415, 416–17. Here, Wife admitted Husband was not involved in her embezzlement and had no knowledge of it. A request for support alimony is a request for an equitable award, and Wife clearly did not approach the equity court with clean hands.

¶ 15 We also disagree with Wife's needs—based argument for additional support alimony. Wife presented evidence that her basic monthly obligations, *including the $400 criminal restitution debt,* were more than her monthly gross income and child support combined. However, Wife's criminal conduct was the reason for her excess financial need. When Mother's gross income of $1,083 is combined with the monthly child support of $793.66, her gross monthly income would be $1,876.66. Husband was also required to pay 80% of any child care expenses, so this amount must be subtracted from Mother's budget analysis. If Wife's restitution debt is also deducted from her monthly budget, her needs would be approximately $1,487 per

month, and she would have sufficient income to meet her needs.[1] While we cannot ignore the reality that Mother will have to pay this restitution to avoid returning to prison, the trial court was not required in this equitable proceeding to make Husband pay for Wife's criminal activity and thereby relieve Wife of her criminal liability. The trial court did not abuse its discretion by refusing to require Husband to pay Wife's restitution debt as support alimony.

■ ¶ 16 Wife also contends her criminal restitution debt was marital debt that the court should have equitably divided between the parties. Wife argues that Husband benefitted unknowingly from her embezzlement because she spent the embezzled money on clothes, bills, etc. for the family while Husband was unemployed. However, Husband disputed that the family received any benefit, and also disputed Wife's testimony that she embezzled to provide for the family. He testified that the family was not in need because he was only unemployed during the last few months of Wife's embezzlement. In addition, he testified that the items he noticed that could not be explained by their normal income were luxury items Wife bought for herself like a new dress or a new purse. In addition, Wife did not provide any specific examples or proof showing how the family benefitted from her embezzlement. The court could have determined that there was little, if any, benefit to the family from Wife's embezzlement. In addition, the embezzlement was also detrimental to Husband because he had to help pay for the restitution during the marriage. Husband withdrew all his retirement of approximately $6,900 from his former employment as a correctional officer to help make a down payment on the restitution debt. The value of this retirement would have been far greater if it had been allowed to mature instead of being used prematurely to pay Wife's restitution debt.

1. Wife's analysis of her financial need also ignored the cash benefits she received. Wife received several months without a house payment and a significant cash property division. *See Bond v. Bond*, 1996 OK CIV APP 3, ¶ 13, 916 P.2d 272, 275–76 (stating claim for alimony must be supported by excess need above the property award). In addition, Wife's family has helped her pay for several necessary items. "Support alimony is need based and hence to the extent the supported spouse has monies available—regardless of their source—to meet needs, he/she is obliged to use them." *Wilson,* ¶ 9, 987 P.2d at 1215.

¶ 17 It is also significant that the restitution Wife owed was not for a civil settlement or judgment. The restitution was clearly part of her criminal penalty. Although there are no published decisions from Oklahoma appellate courts on this specific issue, several other courts that have addressed similar questions have held that debts from criminal activities are not marital debts. *See, e.g., Harasym v. Harasym,* 418 Pa.Super. 486, 614 A.2d 742, 746 (1992) (holding husband's $10,000 settlement regarding allegations of Medicare fraud was not considered marital debt even if innocent spouse may have unwittingly benefitted); *Curda–Derickson v. Derickson,* 266 Wis.2d 453, 668 N.W.2d 736 (2003) (holding restitution debt for husband's embezzlement was not marital debt based on state statute). The court has wide discretion to make a division of property as is "equitable and just." 43 O.S.2001 § 108. Here, it was undisputed that Wife was solely responsible for incurring this restitution debt. We find that the court did not abuse its discretion by refusing to divide this debt.

¶ 18 Fourth, we find the trial court did not abuse its discretion by setting the market value of the Oklahoma home at $58,100, the price for which the parties had purchased the home in 1994. Husband argues that the value of the house had increased over the years, and had at least increased by $4,400, the cost of a central heat and air unit the couple installed in 1996. Husband also argues his expert's evaluation was due more weight than Wife's estimate of the home's value. Of course, our review of a trial court's valuation of marital assets is limited to determining if the court's findings are clearly against the weight of the evidence. *Bond,* ¶ 8, 916 P.2d at 274–75.

¶ 19 Wife testified that the equity in the house was approximately $10,000. She stated her opinion was based on a market analysis that set the value at $43,000, but she did not produce the analysis into evidence. On the other hand, Husband produced expert testimony that the value of the house was $69,000. However, Wife's attorney argued that the comparables upon which the expert relied were too different to provide an accurate comparison. In addition, Wife testified that the central heat and air unit did not increase the value of the home because it had never worked properly. The value established by the court was between the values given by Wife and Husband. We thus find that the court's valuation was not against the clear weight of the evidence, and affirm the award of equity to Husband.

¶ 20 Fifth, we find that the trial court did not abuse its discretion by awarding Wife $850 in attorney fees, which it stated was half of the reasonable amount of her attorney fees. Wife argues she should have been awarded $2,500 in attorney fees, while Husband argues no award was justified. The trial court has the discretion to "require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances." 43 O.S. Supp.2002 § 110(D). The determination of whether and how to assess attorney fees is within the trial court's sound discretion. *Casey v. Casey,* 1993 OK CIV APP 129, ¶ 8, 860 P.2d 807, 810.

¶ 21 Husband testified he had paid his attorney $1,700, while Wife testified she paid her attorney $2,500. However, Wife failed to support her attorney fee request with any evidence that would show why her attorney fee was more than Husband's. We find no abuse of discretion in setting the reasonable amount of attorney fees at the amount Husband had paid his own attorney. Likewise, we find no abuse of discretion in requiring Husband to pay Wife half of that reasonable amount. Wife certainly had a lesser ability to pay the attorney fee award. However, Wife's parents had already paid at least $1,000 of her attorney fees, and she would also have cash benefits from her property division. In addition, Wife admitted that approximately $760 of the fees she paid came from a deposit refund from the couple's townhouse in Virginia. The attorney fee award is affirmed.

¶ 22 Finally, we find no merit to Wife's argument that the court showed bias to Husband because he came to trial in his military uniform and would soon be deployed overseas. There is no evidence of bias in the transcript to support this accusation. We

will not presume prejudice or bias without a showing that the trial judge's impartiality can be reasonably questioned. *Pierce v. Pierce,* 2001 OK 97, ¶ 19, 39 P.3d 791, 799.

¶ 23 AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

HANSEN and JOPLIN, JJ., concur.