2007 OK CIV APP 61

**In re the Marriage of Donald G. WOOD-ARD, Petitioner/Appellant,**

v.

**Beverly R. WOODARD, Respondent/Appellee.**

No. 103,432.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 18, 2007.

Martha Tehan, Law Office of Martha Tehan, Oklahoma City, OK, for Petitioner/Appellant.

Raymond L. Vaughn, Jr., Matthew L. Winton, Vaughn & Winton, P.L.L.C., Edmond, OK, for Respondent/Appellee.

CAROL M. HANSEN, Presiding Judge.

¶ 1 Petitioner, Donald G. Woodard, [Husband] and Respondent, Beverly R. Woodard, [Wife] were married in September 1984. Since 1977, Husband had been a firefighter, first with the Edmond Fire Department, and then in 1980, with the Oklahoma City Fire Department. In February 1997, Husband had

worked as a firefighter for twenty years. At that time, he was eligible for retirement and a monthly service retirement pension.[1] [Plan A]. Husband did not retire at that time.

¶ 2 On April 1, 2000, in lieu of terminating employment and accepting a service retirement pension, Husband enrolled in the Oklahoma Firefighters Deferred Option Plan.[2] [Plan B] Pursuant to the deferred option plan, Husband's effective retirement date would be April 1, 2005.

¶ 3 On December 30, 2004, Husband suffered a heart attack while on the job. He did not return to work after that date. During his recuperation, pursuant to 11 O.S.2005 Supp. 49–109, Husband applied to the State Board of the Oklahoma Firefighters Pension and Retirement System for a disability in the line of duty pension,[3] available to every member once he accrues twenty years of service. While awaiting its decision, Husband was placed "... on a regular pension and/or was able 'to serve out under the Injury Leave Provision of 49–109 or under the sick leave provisions offered through the City of Oklahoma City Fire Department.'"

¶ 4 On April 15, 2005, the State Board approved Husband's application for the dis-

1. Title 11 O.S.2005 Supp. Section 49–106(A) provides that any firefighter who reaches the firefighter's normal retirement date shall be entitled, upon written request, to retire from such service and be paid from the Oklahoma Firefighters Pension and Retirement System a monthly pension equal to the members' accrued retirement benefit.

2. Title 11 O.S.2005 Supp. Section 49–106.1 provides that in lieu of terminating employment and accepting a service retirement pension, any member of the Oklahoma Firefighters Pension and Retirement System who has not less than twenty years of creditable service and who is eligible to receive a service retirement pension, may elect to participate in the Oklahoma Firefighters Deferred Option Plan and defer the receipts of benefits. Section 49–106.1(C) provides "[t]he duration of participation in the Oklahoma Firefighters Deferred Option Plan for active firefighters shall not exceed five (5) years..... D. When a member begins participation in the Oklahoma Firefighters Deferred Option Plan, the contribution of the member shall cease. The employer contributions shall continue to be paid.... Employer contributions for members who elect the Oklahoma Firefighters Deferred Option Plan shall be credited equally to the Oklahoma Firefighters Pension and Retirement System and to the Oklahoma Firefighters Deferred Option Plan account. The monthly retirement benefits that would have been payable had the member elected to cease employment and receive a service retirement shall be paid into the member's Oklahoma Firefighters Deferred Option Plan account.
   ....
   F. A member in the plan shall receive, at the option of the member, a lump sum payment from the account equal to the payments to the account or an annuity based upon the account of the member or may elect any other method of payment if approved by the Board of Trustees. If a member becomes so physically or mentally disabled while in, or in consequence of, the per-

formance of his duty as to prevent the effective performance of his duties that the State Board approves an in line of duty disability pension, the payment from the account shall be an in line of duty disability payment."

3. Section 49–109(A) provides: "Whenever any firefighter serving in any capacity in a regularly constituted fire department of a municipality shall become so physically or mentally disabled while in, or in consequence of, the performance of the firefighter's duty as to prevent the effective performance of the firefighter's duties, the State Board may, upon the firefighter's written request, ... retire the firefighter from active service, and if so retired, shall direct that the firefighter be paid from the System a monthly pension equal to the greater of:
   1. Fifty percent (50%) of the average monthly salary which was paid to the firefighter during the last thirty (30) months of the firefighter's service; or
   2. Two and one-half percent (2½%) of the firefighter's final average salary multiplied by the member's years of credited service, not to exceed thirty (30) years, provided such firefighter has completed twenty (20) or more years of credited service.
   B.... If a firefighter participates in the Oklahoma Firefighters Deferred Option Plan pursuant to Section 49–106.1 of this title, the firefighter's disability pension provided pursuant to this subsection shall be reduced to account for the firefighter's participation in the Oklahoma Firefighters Deferred Option Plan.
   * * *
   D. No firefighter shall accrue additional service time while receiving a disability pension; provided further, that nothing herein contained shall affect the eligibility of any firefighter to apply for and receive a retirement pension after the firefighter's normal retirement date; provided further, that no firefighter shall receive retirement benefits from the System. Any member or beneficiary eligible to receive a monthly benefit pursuant to this section may make an election to waive all or a portion of monthly benefits."

ability pension in the amount of $3,398.37 [4] effective April 1, 2005. The date of April 1, 2005, was also the effective date of Husband's retirement.

¶ 5 On April 28, 2005, Husband filed his Petition for Dissolution of Marriage. Wife filed an Answer to Petitioner's Petition and a Cross Petition for Divorce. After a trial of the matter, the trial court entered a Decree of Dissolution of Marriage wherein, among other things, the trial court found the parties had separated on April 28, 2005. The trial court also found:

> **THE COURT FURTHER FINDS** that the Petitioner's disability in line of duty pension, Plan A, of the Oklahoma Firefighter's Pension and Retirement System pension plan is divisible marital property, whereby the circumstances of this case are distinguished from those in *Christmas v. Christmas,* 1990 OK 16, 787 P.2d 1267, in that the Petitioner herein qualified for both Plan A and Plan B before he filed his Petition for Dissolution of Marriage and that the only benefit to the Petitioner involves the tax treatment of Plan A funds.[5]

¶ 6 As a result, the trial court awarded to Husband, as his separate property, among other things, "Sixty-five and twenty-five one hundredths percent (65.25%) of his future benefits from Firefighter's Pension benefit Plan A, subject to the QDRO in favor of the Respondent recited hereinbelow." The trial court awarded to Wife, as her separate property, among other things, "Thirty-four and seventy-five one hundredths percent (34.75%) of the Petitioner's future benefits from the Firefighter's Pension benefit Plan A, by way of QDRO whereby the Respondent shall be responsible for payment of all taxes associated with her gross share."[6] Husband appeals.

¶ 7 Husband argues Husband's Plan A disability benefits are not jointly acquired property subject to division. He argues *Christmas v. Christmas,* 1990 OK 16, 787 P.2d 1267, is applicable. In *Christmas,* the wife filed a petition for divorce in December 1987. Two weeks later, the firefighter husband began a three month stay in a local sanatorium. He sought disability benefits for job stress. Effective July 1988, he was awarded disability in the line of duty benefits, pursuant to 11 O.S. 49–109. The trial court held the husband's disability benefits were jointly-acquired property subject to equal division for the entire time it is paid.

¶ 8 The Supreme Court reversed the trial court's decision, applying a "replacement analysis" to the facts. A replacement analysis ". . . focuses on the replacement nature of the benefits and classifies benefits according to the nature of the assets they replace." Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement Analysis,* 33 UCLA L.Rev. 1250, 1294 (1986). The Supreme Court reasoned:

> All wage continuation plans are deferred compensation and function as insurance. Retirement pensions insure against superannuation, survival beyond retirement age. They function as a substitute for life savings. If a worker was not provided retirement coverage, the additional wages received would presumably be saved for superannuation. These savings, earned during the marriage, would unquestionably constitute joint property.

---

4. The sum of $3,398.37 is gross per month.

5. At the March 10, 2006, hearing wherein it entered its ruling on the matter, the trial court stated, ". . . Petitioner had completed his 20 years under the Plan A, and the entirety of Plan B before he rightfully sought and was granted disability status, and I believe it would be inequitable to characterize the Plan A retirement as a disability, and therefore, a completely separate asset. I believe that the Part A retirement became a marital asset subject to division at the completion of his 20 years of service."

6. The trial court also awarded Husband, as his separate property, "Fifty-percent (50%) of his Oklahoma Firefighter's pension Plan B with a valuation date of April 28, 2005, subject to the QDRO in favor of the Respondent recited herein below." The trial court awarded Wife, as her separate property, "Fifty-percent (50%) of the Petitioner's Oklahoma Firefighter's pension Plan B with a valuation date of April 28, 2005, by way of QDRO" The value of the Plan B pension at the time of trial (March 6, 2006) was approximately $251,107.75.

Disability benefits, on the other hand, do not substitute for savings. Rather, they insure against loss of wages from disability before superannuation. Disability benefits received after divorce replace post-coverture wages that would be the earner's separate property. Thus, while retirement pensions replace joint property, disability benefits replace separate property. This difference in the replacement nature of the benefits requires that disability benefits be classified as the disabled worker's separate property.

The Court further reasoned the nature of the husband's benefits determined the classification, not the fact the benefits are termed a "disability pension" in Title 11. "The Legislature chose to use the designation 'pension' to describe firefighters' retirement, disability and even death benefits. See Okla.Stat. Tit.11, §§ 49–106, 49–109 & 49–112 (1981 & Supp.1989)." The benefits awarded to the husband replaced the wages he would receive but for his disability,[7] and, thus, on remand, the Supreme Court instructed the trial court to consider husband's disability pension as his separate property.

¶ 9 Husband points out the State Board approved him for a disability pension effective April 1, 2005. Therefore, because he was disabled prior to his retirement date, his disability benefits should be awarded to him as his separate property, not subject to division.

■ ¶ 10 We disagree. Utilizing the replacement analysis in *Christmas v. Christmas, supra,* this Court must determine the nature of the disability benefits.[8] If these benefits replace post-coverture wages Husband would receive but for his disability before superannuation, they are his separate property. However, under the present facts, Husband's disability benefits, applied for shortly before his scheduled retirement, were approved on the very date of his retirement. Because Husband's retirement became effective at the exact same time his disability benefits were approved, these benefits do not replace post-coverture wages Husband would receive but for his disability, Instead, the nature of his disability benefits function as a substitute for life savings, insurance against superannuation, survival beyond retirement. Therefore, these benefits are marital property subject to division. As a matter of law, the trial court did not err in determining Husband's disability benefits are marital property subject to division. See, *Thompson v. Thompson,* 2005 OK CIV APP 2, 105 P.3d 346.

¶ 11 Additionally, Mr. Jones, executive director of the Oklahoma Firefighters Pension and Retirement Systems, testified a service retirement pension is available to a firefighter once he obtains twenty years of service, regardless of physical condition. The disability benefit is available because the firefighter is no longer able to perform firefighter duties. The calculation of benefits for a firefighter for a service retirement pension and the calculation of benefits for a firefighter with twenty years of service applying for disability benefits is "identical."

■ ¶ 12 In this case, two weeks after Husband was awarded disability benefits, effective on the date of his retirement, Husband filed his petition for dissolution of his marriage to Wife. But for Husband's unilateral decision to change his Part A service retirement pension to a disability benefit, his service retirement pension would be a marital asset subject to division. Thus, as a

---

7. It appears the husband in *Christmas v. Christmas,* was not yet eligible for a retirement pension.

8. Husband argues the replacement analysis should be expanded in this case to the "analytic approach" to address the "nature" of his pain, suffering, loss of good health, or disfigurement, and his loss of future earnings. The analytic approach, which closely resembles the replacement approach, attempts to determine the underlying nature of a recovery before characterizing it as either marital or separate property. Although Husband cites an Oklahoma case using the analytic approach for classification of a workers compensation award and another Oklahoma case using the analytic approach for classification of a personal injury claim, Husband cites no Oklahoma authority wherein the analytic approach was applied in classifying firefighter's retirement benefits or disability benefits. The trial court did not err in applying the replacement approach in analyzing the nature of his disability benefits.

matter of equity,[9] the trial court did not abuse its discretion in determining his disability in the line of duty pension is divisible marital property and in awarding Wife thirty-four and seventy-five one hundredths percent (34.75%) of Husband's future benefits from Plan A by way of QDRO, and awarding Husband sixty-five and twenty-five one hundredths percent (65.25%) of his future benefits from Plan A. *See Dixon v. Dixon,* 1996 OK CIV APP 61, 919 P.2d 28.

¶ 13 Husband contends that, pursuant to 11 O.S.2005 49–106.1(F), Plan B, the Firefighters Deferred Option Plan payment is deemed a "disability in the line of duty" payment, and, thus, he claims, is not divisible as marital property. He also points out that because, pursuant to the statute, "contribution of the member shall cease," he did not contribute any marital funds to Plan B.

¶ 14 This statute addresses the situation wherein a member becomes disabled and receives a disability benefit while participating in the Plan B Deferred Option Plan. Section 49–106.1(F) provides the Employer payments for members who elect Plan B shall be "... an in line of duty disability payment." Further, section 49–109(D) provides that no firefighter shall accrue additional service time while receiving a disability benefit. Here, Husband began receiving disability benefits after he had completed Plan B Deferred Option Plan and was retired. The nature of Husband's Plan B benefits, which are a deferment of his service retirement pension, function as a substitute for life savings-a retirement benefit. The trial court did not abuse its discretion in awarding Wife fifty-percent (50%) of Husband's Plan B pension with a valuation date of April 28, 2005, and did not abuse its discretion in awarding Husband fifty-percent (50%) of his Plan B pension with a valuation date of April 28, 2005. *See Dixon v. Dixon, supra.*

¶ 15 Finally, Husband contends it was against the weight of the evidence and an abuse of discretion for the trial court to omit any award of Wife's Sisters of Mercy Defined Benefit Plan because it was marital property.

He presented undisputed evidence the value of her benefit plan $10,033.77. Wife does not dispute her benefit plan was acquired during coverture.

¶ 16 In *Allen v. Allen,* 1983 OK CIV APP 66, 672 P.2d 325, the husband appealed the trial court's property division because the trial court awarded the wife the couple's residence. The Court of Civil Appeals stated, "... [t]he failure to allow [the husband] some interest in that property seemingly was unreasonable." However the Court noted that even though it was not mentioned in the divorce decree, the husband testified he had accrued pension rights that would pay him $567.95 per month three years from the trial date. "The trial court's failure to include the pension in the marital estate for division had the effect of awarding it to the husband." The Court further held:

> Considering the award (by silence) of the entire pension to defendant, we conclude that the overall result of the trial court's property division is an equitable one. In fact, defendant received a greater proportion of the marital estate.

¶ 17 In the present case, Husband complains the property division is inequitable because the trial court awarded Wife approximately 35% of his monthly disability payment, a complaint addressed above. However, he does not complain he is entitled to a portion of Wife's benefit plan, only that the trial court's "omission" of the benefit plan is inequitable. There was no "omission" of Wife's benefit plan. The trial court's failure to include it in the marital estate had the effect of awarding it to Wife.

AFFIRMED.

BUETTNER, J., and BELL, J., concur.

---

9. Pursuant to 43 O.S.2001 Section 121, in dividing marital property, the trial court "... shall ... make such division between the parties as may appear just and reasonable ... as may be just and proper to effect a fair and just division thereof."